McMillan *v.* Hannah.

MCMILLAN *v.* HANNAH.

(*Nashville.* April 6, 1901.)

1. CONSTITUTIONAL LAW. *Declaration as to Cheatham County and its effect.*

The declaration of the Constitution of 1870, making Cheatham a constitutional county, makes all lands then actually included in its territorial limits part of the county, regardless of whether they were originally assigned to that county by a valid law. (*Post, pp. 690, 691.*)

Constitution construed: Art. X., Sec. 4.

2. SAME. *Statutes void that reduce area of old county below constitutional minimum.*

A statute is void as reducing the area of an "old county" below the constitutional minimum of five hundred square miles; which changes county lines so as to further reduce the area of a county recognized as constitutional by the Constitution of 1870, which never had, at any time, an area of as much as five hundred square miles. (*Post, pp. 691–693.*)

Constitution construed: Art. IV., Sec. 10.

Act construed: Acts 1881, Ch. 143.

Cases cited: Marion County *v.* Grundy County, 5 Sneed, 490; Roane County *v.* Anderson County, 89 Tenn., 259.

3. COUNTY. *Not estopped to assert claim to its territory, when.*

Acquiescence by a county, for a period of fourteen years, in the illegal claim of another county to a portion of its territory under an unconstitutional statute, will not estop such county to assert its right to the territory. (*Post, pp. 693, 694.*)

FROM CHEATHAM.

Appeal from Chancery Court of Cheatham County. J. S. GRIBBLE, Ch.

22 P—44

A. E. GARNER for McMillan.

R. S. TURNER for Hannah.

CALDWELL, J. This record presents a bill of interpleader, whereby W. G. McMillan, a land owner and taxpayer, brought the counties of Cheatham and Dickson before the Court, for the purpose of ascertaining and settling by decree which of them had jurisdiction of his land and was entitled to receive his taxes.

The Chancellor decided the question in favor of the latter county, but the Court of Chancery Appeals reversed his action and pronounced a decree for the former one.

Cheatham was not one of the original counties of the State. It was created by and formed under Chapter 122 of the Acts of 1855-56, a portion of its territory being taken from the county of Dickson. The Court of Chancery Appeals has conclusively found as a fact that the land now owned by the complainant, and now here in question, is a part of that so transferred from the one county to the other, and that such was its location when the Constitution of 1870 was dopted.

That instrument expressly recognized Cheatham and other comparatively small and new counties as then formed, by the following provision, namely: "The counties of Lewis, Cheatham, and Sequatchie, as now established by legislative enactments, are

hereby declared to be constitutional counties."
Const., Art. 10, Sec. 4.

It follows, therefore, that this land is still
within the proper territorial limits of Cheatham
County, unless it has been legally transferred to
some other county since the adoption of the Con-
stitution.

Dickson County makes the contention that such
a transfer has been made, and that she is the
beneficiary thereof.

Undoubtedly Chapter 143 of the Acts of 1881
was enacted for the purpose of changing the line
between the two counties so as to take this and
other lands out of Cheatham and put them in
Dickson County, and the terms employed are clearly
sufficient for the accomplishment of that end if
the legislation should be considered otherwise valid.

It is said in opposition to the validity of this
Act that it undertakes to reduce the area of
Cheatham County below the constitutional limit,
and that for that reason it must be regarded as
entirely nugatory.

The objection is a serious one. When originally
established, and at the time of the passage of
this Act, the area of Cheatham County was only
310 8-10 square miles, and the effect of the Act,
if constitutional, was to diminish that area to
the extent of the territory intended to be passed
into Dickson County.

Section 4 of Article 10 of the Constitution au-

thorizes the Legislature to form new counties from parts of old ones, each new county to have an area of at least 275 square miles, and no "old county" to be "reduced to less than five hundred square miles."

This restriction against the reduction of the area of an old county below the minimum named applies to the change of county lines as well as to the formation of new counties; and legislation in conflict therewith, whether for the one purpose or the other, is inevitably null and void. *Marion County* v. *Grundy County,* 5 Sneed, 490.

Every county having a legal existence when the present Constitution went into effect falls within the designation, "old county;" consequently, Cheatham, though not an original county, is an "old county," and as such entitled to the full benefit of the restriction mentioned.

It avails nothing to the advantage of Dickson County, or in favor of the constitutionality of the enactment, to say that Cheatham was not by the latter reduced below 500 square miles, but has always been so. The inhibition has the same force in such a case as in any other.

No reduction of an "old county" is allowable in any instance where it leaves a less area than 500 square miles. Only those having more can be diminished in any way. A larger county may be reduced to that limit, but a smaller one cannot be reduced at all.

In the late case of *Roane County* v. *Anderson County* this Court held that the Legislature was without power to make any diminution of the area of a county that was already below that standard. 89 Tenn., 259. A like ruling was made by the Court of Chancery Appeals, and approved orally by this Court, in a still later litigation between the two counties now before the Court. *Cheatham County* v. *Dickson County,* 39 S. W. R., 734.

The conclusion follows, irresistibly, that the Act under consideration is unconstitutional, and that, being so, it is of no legal effect whatever.

Dickson County contends, however, in the next place, that Cheatham County is at least estopped by long acquiesance from now asserting any claim in conflict with the provisions of that Act. The facts pertinent to this contention are, that "Cheatham County made no attempt to assert jurisdiction over the land of the complainant, McMillan," for fourteen years after the passage of the Act, and that he, during that period, paid taxes, sat on juries, voted, served as election officer, and performed the functions of County Superintendent of Public Instruction in Dickson County.

These facts, though ample to preclude Cheatham County from a recovery of the taxes so paid, from either the complainant or Dickson County, are clearly not sufficient to work a transfer of the complainant's land from one county to another.

The former matter was one of revenue merely, which Cheatham County had the power, if not the legal right, to waive and abandon, while the latter was one of territorial ownership, which she had neither the power nor the right to waive or abandon. She could well lose her rightful claim to complainant's taxes for a given period by knowingly permitting him to pay them to another claimant, but she could not by that or any other means contract the limits of her territory below the constitutional standard. The inhibition of the Constitution would be of but little force if it could be so easily nullified or evaded. A reduction of the area which the Legislature is inhibited from making by direct enactment, the county cannot accomplish by mere nonclaim for itself and simple acquiesence in the asserted claim of another. This is especially so where, as in this instance, the quiescent course is pursued for only fourteen years, and is then terminated by an affirmative assertion, in Court, of the orginal status.

The facts of this case do not call for the application of the doctrine announced in the cases of *Rhode Island* v. *Massachusetts,* 4 How., 591; *Indiana* v. *Kentucky,* 136 U. S., 479; and *Virginia* v. *Tennessee,* 148 U. S., 523.

Let the decree of the Court of Chancery Appeals be affirmed.