WOODS et al. v. BALL et al.   (No. 5257.)

(Court of Civil Appeals of Texas. San Antonio. April 8, 1914.)

1. COUNTIES (§ 2*)—CREATION OF NEW COUNTIES—CONSTITUTIONAL PROVISIONS.

Acts 33d Leg. (1st called Sess.) c. 35, creating Dunn county out of a portion of Duval county *held* in violation of Const. art. 9, § 1, subd. 2, providing that no new county shall be created so as to approach nearer than 12 miles of the county seat of a county from which it may be, in whole or in part, taken.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. CONSTITUTIONAL LAW (§ 70*)—DETERMINATION OF VALIDITY—JUDICIAL AUTHORITY.

The Legislature is not the ultimate arbiter of the constitutionality of its acts, but such authority is lodged in the judicial branch of the government.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

3. COUNTIES (§ 12*)—CREATION OF NEW COUNTY.

Const. art. 9, § 1, subd. 2, providing that no new county shall be created so as to come within less than 12 miles of the county seat of the county from which it may be taken, does not mean that the distance from the new county to the county seat of the mother county shall not be measured in a straight line, and, if any part of the line of the new county is nearer than 12 miles of the county seat, the act is unconstitutional.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 7–9; Dec. Dig. § 12.*]

Appeal from District Court, Duval County; W. B. Hopkins, Judge.

Injunction suit by John Ball and others against S. H. Woods and others. From an order granting the injunction, defendants appeal. Affirmed.

Hicks, Hicks & Teagarden, of San Antonio, for appellants. Terrell, Walthall & Terrell, of San Antonio, and G. C. Robinson and Dougherty & Dougherty, all of Beeville, for appellees.

FLY, C. J. T. M. Dubose and John Ball, appellees herein, representing themselves as "resident citizens, qualified voters, and owners of real and personal property in that portion of Duval county placed within the county of Dunn under the terms of an act hereinafter mentioned," applied for an injunction against S. H. Woods, county judge of Duval county, E. Carrillo, A. Parr, J. W. Shaw, and J. M. Corkill, commissioners of said county, and the commissioners' court of Duval county, alleging that, during the first called session of the Thirty-Third Legislature (chapter 35), an act was passed to create Dunn county out of a portion of Duval county; that appellants were preparing to divide the county into precincts, and to call an election of officers in said Dunn county, and to locate the county seat; that the act of the Legislature is in contravention of that part of section 1 of article 9 of the Constitution of the state of Texas as follows: "No new county shall be created so as to approach nearer than twelve (12) miles of the county seat of a county from which it may, in whole or in part, be taken;" that it is also in contravention of section 56 of article 3 of said Constitution, as follows: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * * Locating or changing county seat, * * * creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts." It was further alleged "that a point on the north line of Dunn county is eleven and forty-three hundredths (11.43) miles from the county seat, being the unincorporated town of San Diego;" that the courthouse in San Diego is 11.986 miles from a point on the north line of Dunn county, being less than 12 miles from said line. A plat and field notes showing the distances between San Diego and the north line of Dunn county was attached to and made a part of the petition, as well as the field notes of the north line of said county. It was admitted in the answer that the allegations in the petition as to the distances of the north line of Dunn county from the county seat and from the courthouse, as to the plat, survey, and field notes, and as to other material facts, were true, and they were so found by the district

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

judge, and he also found "that only about six (6) miles along the nearest boundary line between Duval and Dunn counties, as shown by the maps attached to plaintiff's petition, is it less than twelve (12) miles to the nearest point in San Diego, the county seat of Duval county, and an arc with a twelve-mile radius drawn from such point would cut into Dunn county six miles long and one-half (½) mile wide at its greatest depth." The court held that the act creating Dunn county was violative of section 1, subd. 2, of article 9, and section 56 of article 3 of the state Constitution, and an injunction was granted against appellant to restrain them and their successors in office from dividing Dunn county into precincts, and from holding an election therein; and that the territory sought to be put in the county called Dunn by the Legislature be restored to Duval county.

[1] It is with reluctance that this court entertains an attack upon the constitutionality of a statute enacted by the Legislature of the state, but it is a proposition well established by the American courts that the Legislature is not the ultimate arbiter of the constitutionality of its acts, but such authority is lodged in the judicial branch of the government. The right of judicial censorship over statutes has been often assailed, and not to a greater extent than by the strenuous ex-President of the United States, who has founded a new party, founded, at least in part, upon antagonism to what he denounces as "judicial nullification," and who, as a balm for ills, real or imaginary, would submit the constitutionality of the laws of the Legislature, as well as the decisions of courts, to the plebiscite, who are counseled by him to study the history of France, which gives untrammeled power to the legislative branch of its government; the only right reserved in the French Constitution against usurpation of power and tyranny by the Legislature being the right of revolution. The American conception of government is of a different kind from that of the Frenchman, and we doubt that a citizen of our republic can gain any helpful knowledge of popular government by a study of the French system. Ours is a government in which its attributes and powers have been confided to certain distinct branches, each of which is a check upon the other, with the judicial system as the ultimate resort whenever an attempt is made by any branch of the government to exceed its powers or interfere with the charter of our rights, the organic law of the land. The power intrusted to, or assumed by, the judiciary of passing upon the constitutionality of the acts of other branches of the government has been acquiesced in so long as to become a necessary part of the American system. The power intrusted to the courts has at times, doubtless, been abused, but the remedy is not in revolution or the adoption of imperfect and undemocratic methods of other governments that have lagged far behind the American government in the progress towards the establishment of popular institutions.

A law cannot be held to be constitutional merely because the Legislature passed it. No one is willing to attribute such infallibility to a Legislature, and the courts should never hesitate to protect from assault the rights secured by the supreme law of the land. As said by Justice Harlan, in Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819: "The idea that any Legislature, state or federal, can conclusively determine for the people and for the courts that what it enacts in the form of law, or what it authorizes its agents to do, is consistent with the fundamental law is in opposition to the theory of our institutions. The duty rests upon all courts, federal and state, when their jurisdiction is properly invoked, to see to it that no right secured by the supreme law of the land is impaired or destroyed by legislation. This function and duty of the judiciary distinguishes the American system from all other systems of government. The perpetuity of our institutions and the liberty which is enjoyed under them depend, in no small degree, upon the power given the judiciary to declare null and void all legislation that is clearly repugnant to the supreme law of the land."

These prefatory words have been written, not because of any doubt of the courts having full right and authority to pass upon acts of the Legislature, but in view of the contention of appellees that, "the Legislature having passed the act, it cannot be inquired into." No man, nor set of men, in America has been clothed with power to do things which cannot be inquired into by some agency of the people, and infallibility of word or action is a status that is conceded to no branch of the government.

[2] It is also insisted that the presumption will prevail that the Legislature acted upon sufficient facts when the law was enacted. Such presumption might prevail in the absence of evidence, but it cannot be expected that this court will indulge in presumption or surmise in the face of the proof that the Legislature, if it had the facts, acted directly against them. We must conclude that the Legislature was not in possession of the facts, or it would not have acted in defiance of the Constitution of the state. But, if the Legislature had the facts, it acted in defiance of them, and created a county "so as to approach nearer than 12 miles of the county seat" of the county from which it was taken. It is vain and useless to talk of infallibility of the Legislature or presumptions in favor of its acts in the face of stern, unrelenting facts that brand the act creating the new county as violative of a plain constitutional

provision. The Constitution does not say 11½ miles, nor near 12 miles, but that "no new counties shall be created so as to approach nearer than twelve miles of the county seat of any county from which it may, in whole or in part, be taken." If we can hold that such new county can approach 70 feet or 2,640 feet less than 12 miles, we could, with equal propriety, hold that it could approach within 11 or even 10 miles of the county seat. We must enforce the Constitution as we find it, and neither add to nor take away from its words.

[3] Nor can we accede to the proposition that the Constitution meant that the distance from the newly created county to the county seat of the mother county should not be measured in a straight line, but in a tortuous, winding one, so as to cover the shortcomings of the Legislature. The Constitution suggests the "straight and narrow path," and this court will endeavor to walk therein.

There is no Texas decision bearing directly upon the question involved in this case, but similar constitutional provisions have been construed in other states, and the weight of authority strongly sustains the conclusion of this court, in holding that no law creating a new county out of an established one can be valid, unless the nearest approach of the lines of the new county are not within the distance limit prescribed by the Constitution. A review of some of these decisions, to which our attention has been called, will be of interest, and perhaps render more satisfactory the opinion of this court.

In Kentucky the Constitution provides that no county should be established whose boundary line should pass within ten miles of the county seat of the county sought to be divided. The facts in the case of Zimmerman v. Brooks, 118 Ky. 85, 80 S. W. 443, showed that the county of Beckham was created out of portions of three counties, and the boundary line of the new county ran within less than ten miles of the county seat of Carter county, and the creation of said new county also left Carter county with less than the constitutional area. There was a review, by the Kentucky court, of numerous cases, and it was held that parol evidence could be heard as to whether the constitutional area had been lessened by the act, or a boundary line established within less than ten miles of the county seat of one of the parent counties. The court held: "The Legislature, in the creation of new counties, is simply an agency, with well-defined restrictions upon its powers. If it acts in a case where it has no power to act, its act, like that of any other agent beyond the scope of its power, is void. The county whose rights are affected may complain, and so may any taxpayer who is prejudiced, for the taxpayers have a right to insist upon their constitutional protection against the increased burdens which the formation of the new county will entail." The

court, after stating the different constitutional provisions to be complied with in establishing new counties, among the number being that the boundary line of the new county must not pass within less than ten miles of the county seat of any county from which a portion of the territory is taken, held: "If any of these conditions are wanting, the act is in violation of the Constitution, and void."

In the case of Gotcher v. Burrows, 9 Humph. (Tenn.) 585, it was held, in regard to a similar constitutional provision to that in the Texas Constitution: Such a provision is absolutely prohibitory of the power of a Legislature, either in the establishment of a new county, or in taking from one county a portion of its territory and attaching it to another, or in changing the lines of adjoining counties, to approach the courthouse of a county whose territory is taken nearer than the prescribed distance; and, if this prohibition is violated, the court of chancery will restore the old county to its constitutional limits. That enunciation of the law is sustained in Union County v. Knox, 90 Tenn. 254, 18 S. W. 254; McMillan v. Hannah, 106 Tenn. 689, 61 S. W. 1020; Armstrong v. State, 29 Okl. 161, 116 Pac. 772, Ann. Cas. 1913A, 565; Kline v. State, 146 Ala. 1, 41 South. 952; and State v. Ellis, 42 La. Ann. 1104, 8 South. 305.

There was no attempt to vary the calls made by the Legislature, but by a mathematical calculation it appears that the north line of Dunn county is less than 12 miles from the county seat of Duval county. The Legislature is held to a knowledge, as are the courts, of the boundaries of the different counties, and, looking at the boundaries of the new county in the light of the beginning point, the call for the first line northwest about 37½ miles to the east boundary line of Webb county forms the basis for arriving at the conclusion that the northeast corner of Dunn county and the southeast corner of Duval county on the west boundary line of Jim Wells county where it intersects the north line of Los Ancuas grant is a little over 12 miles from San Diego, and that a line about 37½ miles long, run northwest, would at certain points necessarily pass within less than 12 miles of San Diego. That it did so is admitted by appellants. Not only was the nearest point of the town of San Diego less than 12 miles from the line of Dunn county, but the courthouse was also less than 12 miles, and, while it may not be necessary to decide whether, in measuring the distance, the line should be run to the courthouse or the outer edge of the town nearest to the line of the new county, that matter has been settled by the Supreme Court in the case of Ralls v. Parrish, 105 Tex. 258, 147 S. W. 564, in which it was held, in connection with the removal of a county seat within the 5-mile radius of the geographical center of the county, that, where

any portion of an unincorporated county seat was situated within the 5 miles, it required two-thirds of the voters to move it, under the provisions of article 811, Revised Statutes of 1895.

The Kentucky case cited, as well as others therein named, have held that, where the power of the Legislature is limited by the Constitution of the state, parol evidence will be received to show that the constitutional restriction has been disregarded by the Legislature. In those cases it was held that the property owner in the territory affected could sue to prevent the organization of the county, and that right is recognized in Texas. Oden v. Barbee, 103 Tex. 449, 129 S. W. 602.

Every reasonable presumption should be indulged in support of an act of the Legislature, but presumption cannot exist in the face of fact, and, as the Legislature calls for a line running northwest from the beginning corner to a point on a certain line, that line must necessarily be a straight line, and we cannot presume that the Legislature intended for the line to be run straight until it reached a point where the 12-mile limit was reached, then to curve away from the county seat of the parent county so as to maintain the 12 miles distance, and then curve back into the line called for. The same rules will be applied to a legislative survey as to any other, and it would be preposterous to curve a line in a grant called for as straight. The legislative call is for a line running for 37½ miles in a certain course, to a certain point, and there is no place for a presumption of a curve in the line. We cannot therefore sustain the proposition of appellants "that it should be presumed that the Legislature intended in its calls for that boundary line that, instead of being a straight line throughout its distance, it should run in a straight line from the beginning point, or northeast corner, until it reached a point 12 miles from the county seat of Duval county, then should curve in an arc 12 miles from the county seat of Duval county, where it would intersect the straight line drawn from the beginning corner to the point on the east boundary line of Webb county called for." That would be drawing too heavily on the law of presumptions to be honored by this court.

The Constitution does not provide that no new county shall be created that approaches nearer than 12 miles along a whole boundary line, but provides that it shall not approach within that distance at any point, and, although Dunn county is less than 12 miles from San Diego, for only 6 miles along its northern border, that is sufficient to bring it within the purview of the Constitution.

We need not discuss the constitutionality of the act under the other provision of the Constitution hereinbefore quoted.

The judgment is affirmed.