### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

---

## NASHVILLE, DECEMBER TERM, 1915.

---

GILES COUNTY *v.* MARSHALL COUNTY.

(*Nashville.* December Term, 1915.)

1. **COUNTIES. Partition. Constitution.**

   The provision of the Const. art. 10 sec. 4, that where a new county is established by carving territory from old territories, no part of an existing county shall be taken to form a new county without the consent of two-thirds of the qualified voters in such part taken, does not apply, where a portion of one county is, by the legislature, removed and added to an already existing county. (*Post, pp.* 417, 418.)

   Acts cited and construed: Acts 1915, ch. 384.

   Case cited and approved: Cocke v. Gooch, 52 Tenn., 294.

   Constitution cited and construed: Art. 10, sec. 4.

2. **COUNTIES. Partition. Statutes.**

   Const. art. 10, sec. 4, providing for removing of territory from existing counties, and formation of new counties, and declaring

(414)

Giles County v. Marshall County.

that no line of such county shall approach the courthouse of any old county from which it may be taken nearer than eleven miles, applies where a strip of land is removed from one county and added to another; and Priv. Acts 1915, ch. 384, carving a strip from Giles county and adding it to Marshall county, is invalid, as the line of Marshall county as advanced is nearer than eleven miles of the courthouse of Giles county. (*Post, pp.* 418, 419.)

Cases cited and approved:  Gotcher v. Burrows, 28 Tenn., 585; Cheatham county v. Dickson county, 39 S. W. 734; McMillan v. Hannah, 106 Tenn., 689; Union County v. Knox County, 90 Tenn., 541.

3. **COUNTIES. Partition. Statutes.**

As the court cannot presume on the intent of the legislature (Priv. Acts 1915, ch. 384) which removed from Giles and added to Marshall county a strip of territory, which, in some places, brought the line of Marshall county within eleven miles of Giles county courthouse, the act cannot be sustained by forcing back the line of Marshall county in those places where it came within eleven miles of the county courthouse. (*Post, pp.* 419-422.)

Cases cited and approved:  Maury County v. Lewis County, 31 Tenn., 236; Bridgenor v. Rodgers, 41 Tenn., 260.

---

FROM GILES   .        .

---

Appeal from the Chancery Court of Giles County.— WALTER S. BEARDEN, Chancellor.

ROBT. C. ARMSTRONG. P. C. SMITHSON and MARSHALL & MARSHALL, for appellant.

CHILDERS & WOODWARD, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by Giles county, in its corporate capacity, against Marshall county, seeking to enjoin the defendant county from exercising any jurisdiction over a strip of territory attempted to be taken from the complainant county and added to Marshall county by private Acts 1915, chapter 384. The constitutionality of the act is attacked by the bill of complaint on two grounds set out below.

The chancellor held the act to be invalid, and the county of Marshall has prayed an appeal to this court and assigned errors.

It is manifest that the reason for the passage of the act was to add to the defendant county's area the strip in question so as to bring under that county's taxing power a considerable milage of a railway recently constructed along the eastern border of Giles county.

The contention of complainant county is that the act is violative of article 10, section 4, of the Constitution of this State, which provides:

"New counties may be established by the legislature to consist of not less than two hundred and seventy-five square miles, and which shall contain a population of seven hundred qualified voters; no line of such county shall approach the courthouse of any old county from which it may be taken nearer than eleven miles, nor shall such old county be reduced to less than five hundred square miles. . . . No part of a county shall be taken off to form a new county or a part

thereof without the consent of two-thirds of the qualified voters in such part taken off; and where an old county is reduced for the purpose of forming a new one, the seat of justice in said old county shall not be removed without the concurrence of two-thirds of both branches of the legislature," etc.

For Giles county it is in defense particularized: First, that it was not competent for the legislature to take off such a part of that county, without making in the legislative act some provision for a submission of the question to the qualified voters residing within the territory sought to be detached, for an expression of their consent or dissent, in some mode.

We cannot adopt this view urged by complainant. The provision respecting the consent of the qualified voters applies only when a new county is to be formed or created. In that event "no part of a county shall be taken off to form a new county or a part thereof." By a "part thereof" is meant the taking of parts from two or more old counties to create a new one, as was the case presented to this court by the suit which involved the proposed county of Bell (named in honor of Tennessee's statesman, John Bell), passed on in Cocke v. Gooch, 5 Heisk. (52 Tenn.), 294. The attempt there was to form a county of Bell out of fractional parts to be taken from the existing counties of Hardeman, Fayette, and McNairy. Some test as to "consent" of the residents of the fractional parts in such case is requisite. But ever since the adoption of the Constitution of

1870 the Legislature has passed acts, now very numerous, changing county lines by the shifting of territory without making any sort of provision to ascertain the will of those living in the area affected; and this, without any question being raised as to invalidity under the constitutional provisions invoked in this case.

But Giles county must prevail on an other contention —that the act detaching the territory in question is void, since the line of Marshall county as it was sought to be advanced and fixed reaches nearer than eleven miles of the courthouse of Giles county.

The immediate language of the Constitution is:

"No line of such county shall approach the courthouse of any old county from which it may be taken, nearer than eleven miles."

Although the act of the legislature here in question was not passed for the purpose of creating a new county, and the constitutional inhibition would, at first blush, seem in terms, at least, to be directed against acts of that character, yet it has been given a more liberal construction to accord with the spirit of the clause and with the object in view, and to apply equally to acts passed for the purpose of taking territory from one county and adding it to another.

This liberal construction was given to the Constitution of 1834 (article 10, sec. 4), containing a similar provision, save that the limit of protection was twelve miles. *Gotcher* v. *Burrows,* 9 Humph. (28 Tenn.), 585.

And the same construction has been adopted for the clause of the Constitution of 1870. *Cheatham County* v.

*Dickson County,* 39 S. W., 734; *McMillan* v. *Hannah,* 106 Tenn., 689, 61 S. W., 1020; *Union County* v. *Knox County,* 90 Tenn., 541, 18 S. W., 254, and cases cited.

The chief counter contention in behalf of Marshall county is that while the line cutting off the strip in question does trench to an extent on the constitutional rights of Giles county, yet that by far the larger portion of the detached territory lies more than eleven miles distant from the courthouse of Giles county at Pulaski, and that therefore the full measure of Giles county's remedy is to have the line forced back by a decree of court to a distance of eleven miles, leaving the remainder within the jurisdiction of Marshall county.

In the case of *Gotcher* v. *Burrows,* supra, the facts were that the legislature had passed an act attempting to detach two civil districts from Coffee county and to attach same to Grundy county, and the validity of the act was brought in question in a suit between the justices composing the *quorum* courts of the counties, respectively. This was tantamount to the suit being between the two counties in their corporate capacities. *Maury County* v. *Lewis County,* 1 Swan (31 Tenn.), 236; *Bridgenor* v. *Rodgers,* 1 Cold. (41 Tenn.), 260.

The line detaching the districts from Coffee county was at places within less than twelve miles of the courthouse of Coffee county. In other words, we understand that the line—required by the then Constitution (of 1834) to be at least twelve miles from the Coffee county courthouse—so ran as to put portions of the territory beyond, and parts within, the twelve-mile limit. The

court held the legislative act void, and decreed that the right of Coffee county to the territory was the same as though the act had not been passed.

Referring to the constitutional restrictive provision the court, speaking through Judge McKinney, said:

"We construe it to be an absolute prohibition of the power, on the part of the legislature, either in the establishment of a new county, or in taking from one county a portion of its territory and attaching it to another, or in changing the lines of adjoining counties, to approach the courthouse of the county whose territory is taken for either of the foregoing purposes nearer than twelve miles. The restriction in question was designed to be a perpetual quaranty against legislative encroachment in whatever mode it might be attempted, and it is manifest that upon any other construction, the restriction would be utterly inoperative and unmeaning. . . . A constitutional provision, so wise and salutary in itself, so indispensably necessary for the protection of important interests, public as well as private, and no less essential to the quiet and repose of local communities, cannot be disregarded or evaded in the mode attempted in this case. We are of opinion that the act of 1846, chapter 134, is wholly unconstitutional and void, and therefore affirm the decree of the chancellor."

In *Maury County* v. *Lewis County,* 1 Swan (31 Tenn.), 235, it appears that the creation of the county of Lewis was involved, a fraction of Maury county being taken to that end. The act of the legislature stipulated

that the commissioners named should so run the line as to leave Columbia, the county seat of Maury county, twelve miles to the east in accordance with the Constitution of 1834; but the commissioners by error actually ran the line in such way as that at point or points it came within eleven and one-fourth miles of Columbia. The court said:

"If the act establishing the county of Lewis had designated the boundary in question to be as it was run by the commissioners, there is no question but that it would be considered a void exercise of power. . . . Regarding it as a void designation of boundary, the vested rights of Maury were not affected by it, but remain as if the boundary had not been made."

This court in that case decreed the restoration to Maury county of—

"her original limits, as no boundary has been run for the county of Lewis in conformity to the limitations and restrictions contained in the Constitution."

We cannot say that the legislature would have acted had the effort been one to detach only the portion of the territory that lies beyond the eleven-mile line, and undertake to reform the act or its results accordingly. It may be conceived that a case may arise where the influence prompting and moving that body came from persons who reside within, or a situation arising within, that portion of such an area which lies within the zone protected by the Constitution. We may not enter into an investigation as to the legislature's motive and

thereby thus save such an act (as to claimed partial effectiveness) from unconstitutionality in the one case, and denounce it as a violation of the constitutional inhibition in the other.

The decree of the chancellor is affirmed.