[No. 8728.   Department Two.   December 30, 1910.]

WILLIAM H. WILTON, *Respondent*, v. PIERCE COUNTY *et al.,*
                    *Appellants.*[1]

MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—ELECTIONS—VALIDITY—POLLING PLACES. Under the general election laws which require the division of a county into election precincts and the designation of one voting place in each precinct, and which make residence within the precinct a necessary qualification of an elector, a city election for the annexation of territory is void where no voting places were designated in several of the precincts; since the electors therein were thereby disfranchised.

INJUNCTION—JURISDICTION—ELECTIONS—MUNICIPAL CORPORATIONS—POLITICAL QUESTIONS. An injunction against the canvassing of returns of an illegal city election for the annexation of territory involves property rights, and a court of equity will not refuse jurisdiction on the ground that only a political question is involved.

MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—INJUNCTION—PERSONS ENTITLED TO SUE. Rem. & Bal. Code, § 4945, providing that no person can contest an election unless he is a qualified elector of the district etc., in which the office is to be exercised, has no application to an action in equity to enjoin the canvass of returns of an illegal city election for the annexation of territory.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered February 16, 1910, upon the pleadings, after overruling a demurrer to the complaint, enjoining the canvassing of election returns. Affirmed.

*J. L. McMurray* and *Frank D. Oakley*, for appellants.

*F. Campbell* and *Burdick & McQuesten*, for respondent.

MORRIS, J.—Appeal from a decree granting an injunction, enjoining appellants from canvassing the returns of an election held January 8, 1910, the purpose of which was the annexation of territory to the city of Tacoma. The complaint alleged respondent to be a resident and freeholder within the territory sought to be annexed, and then followed

a number of alleged illegal features in the holding of the
election, only a few of which we will notice, as the decree
was entered upon motion for judgment upon the pleadings.
We will, therefore, only refer to those charges which are
admitted in the answer and upon which the judgment must
rest, if at all.

The complaint charged, and the answer admitted, the
places fixed in the notice where the election would be held,
which places in some instances were not within the regularly
established voting precinct of the county within the district
sought to be annexed. It is also admitted that, in eight of
the precincts of the county, portions of the territory of
which were included within the district sought to be an-
nexed, no polling places were established by the notice call-
ing for the election. The election was held under Laws 1907,
ch. 245, p. 676 (Rem. & Bal. Code, § 7445 et seq.), providing
that, upon the presentation of a petition signed by twenty per
centum of the qualified electors resident within the territory
sought to be annexed, the board of county commissioners,
after due hearing and determination of regularity, shall call
"an election to be held in such proposed territory to be an-
nexed," notice of which shall be given in form not material
to be here inquired into. "Such election shall be conducted
in accordance with the general election laws of the state, and
no person shall be entitled to vote thereat unless he shall be
a qualified elector." The general election laws, under which
an election of this character is, by the terms of the act, to be
held, provide that the board of county commissioners in each
county shall divide their respective counties into election pre-
cincts, establish the boundaries thereof, and designate one
voting place in each precinct. Rem. & Bal. Code, § 4798.
This annexation act also provides that the question of an-
nexation of the proposed territory shall be submitted to the
qualified electors of the territory. Among the necessary
qualifications of an elector is residence within the precinct
for thirty days preceding an election. Manifestly, then, a

resident of the proposed territory would not be a qualified elector therein, except as he was a qualified elector of some already established precinct. Residence within the precinct being a necessary qualification, one could not be a qualified elector except within the precinct in which he resided; and any attempt to exercise the right of franchise under the general law must be made within the precinct in which the elector resides. Outside of the boundaries of that precinct he is not a qualified elector for the purpose of there voting. When, therefore, an elector in "White" precinct was compelled to go to a designated place in "Black" precinct to cast his vote, he lost his right thereto. When he left the boundaries of "White" precinct in which he resided and attempted to cast a vote in "Black" precinct, such a vote was not the vote of a qualified elector, and any election affected by such votes would not be an election by qualified electors. The question of convenience of the voters is not to be considered. It is rather one of qualification, and each elector must cast his vote within that precinct residence in which clothes him with the qualifications of an elector. The residents of these eight precincts who were compelled to go outside of their resident precincts in order to vote, lost the right to vote by doing so, and the question was not, as provided for in the act, submitted to the qualified electors of the territory.

Counsel for appellants argues such is not a correct construction of the statute, because in school elections voters may vote in places outside of the election precincts in which they reside. True; but in school elections, residence within election precincts is not a qualification of the voter. The qualification is special; not at all according to the general election laws as provided for in this statute, the qualification as to residence being residence within the school district. Manifestly, upon the same reasoning one could not vote at a school election in a district within which he did not reside. There is nothing contrary to these views in *Mayor of Val-*

*verde v. Shattuck,* 19 Colo. 104, 34 Pac. 947, 41 Am. St. 208, and *State ex rel. Birchmore v. State Board of Canvassers,* 78 S. C. 461, 59 S. E. 145, 14 L. R. A. (N. S.) 850, cited by appellants. It follows that the election was not legal in that it was not an election by qualified electors.

Appellants contend that the court below had no jurisdiction; that the question is purely a political one. We concede that a court of equity has no jurisdiction over a purely political question, such as is involved in many questions growing out of some matters pertaining to or involving elections. But the question here submitted involves more than a political right; it reaches farther and touches the property right of the citizen. Such, we think, is established by previous holdings of this court upon a like question. *State ex rel. West Seattle v. Superior Court,* 36 Wash. 566, 79 Pac. 29; *State v. Nicoll,* 40 Wash. 517, 82 Pac. 895; *Brown's Estate v. West Seattle,* 43 Wash. 26, 85 Pac. 854. The freeholder in the rural and the freeholder in the urban district hold their property subject to different rights of taxation, special assessments, and different regulations as to sanitary and other regulations affecting the public health, safety and general welfare. It is too clear for argument that property in a city is subject to many restrictions which create a burden not borne by property outside of the municipal boundaries. When, therefore, the property of a citizen is brought within the municipal boundaries of a city, his property rights have been affected. He must now hold that property subject to many regulations, restrictions, and burdens not previously attaching to it. And in seeking to prevent such a transfer he presents more than a political question; it is one which affects him in his property as well as his political right.

Appellants further contend that respondent, in describing himself as "a resident and freeholder within the territory," pleads himself out of court, in that he fails to describe himself as an elector, and the general election laws provide that

"No person shall be competent to. contest an election unless he is a qualified elector of the district, county, or precinct, as the case may be, in which the office is to be exercised." Rem. & Bal. Code, § 4945. This is not an election contest. Respondent is not here contesting the right of any person to hold office. Rather, he is seeking to protect an infringement of his property rights, attempted to be made without compliance with the law giving the right of such infringement.

Believing, therefore, that the failure to follow the mandate of the law as to the manner of holding this election rendered the same illegal, the respondent was entitled to the decree appealed from, and the same is affirmed.

RUDKIN, C. J., CROW, and DUNBAR, JJ., concur.

CHADWICK, J., took no part.