FUERST BROS. & CO., Inc., v. POLASKY et al.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

No. 118.

1. SALES ⬠442(2)—ACTIONS—DAMAGES.
   In a suit for breach of warranty, the ordinary measure of damages is the difference between the value of the article contracted for and that delivered.

2. COURTS ⬠329—FEDERAL COURTS—JURISDICTION.
   The federal court is without jurisdiction of a suit based on diversity of citizenship, unless the allegation of damages is sufficient on its face to satisfy the jurisdictional requirement as to the amount involved.

3. SALES ⬠435(5)—ACTIONS—DAMAGES.
   In an action for breach of warranty as to the amount of thorium contained in sand, an averment of special damage, in that the sand delivered contained approximately one-fifth less thorium than the sand which the seller agreed to deliver, so that 20 per cent. of the chemicals and labor used in extracting it were wasted, is insufficient as an averment of special damage, not showing that the character of the sand could not have been ascertained without treating the whole of it.

4. SALES ⬠442(6, 7)—DAMAGES—SPECIAL DAMAGE.
   Where sand sold contained about one-fifth less thorium than represented, and the buyers learned that fact after treating a small part, they cannot, having treated the entire amount, recover as special damages one-fifth of the expense of reduction, on the theory that, as the yield was

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one-fifth less than the amount agreed upon, that percentage of expense was wasted.

5. SALES ⊙⇒442(1)—DAMAGES—MEASURE.

   Where sand contained a less quantity of thorium than represented, the buyers' measure of damages is the value of the extracted thorium in quantity equal to what the sand should have contained, less the cost of extraction, plus the contract price of the sand.

In Error to the District Court of the United States for the Southern District of New York.

Action by Harry Polasky and another, trading as the New Process Gas Mantle Company, against Fuerst Bros. & Co., Incorporated. There was a judgment for plaintiffs, and defendant brings error. Reversed, and complaint dismissed.

Writ of error to a judgment of the District Court for the Southern District of New York for $3,986.75 in an action at law upon the verdict of a jury. The jurisdiction of the District Court depended upon diversity of citizenship and the amount in controversy. The complaint, after stating diversity of citizenship, went on to allege that on the 25th of June, 1915, the plaintiffs agreed to purchase of the defendant 30 tons of monazite sand, containing a minimum of 6 per cent. thorium oxide, at the rate of $55 for each per cent. of thorium oxide per short ton, the percentage to be based upon a European chemist's analysis; that thereafter the defendants delivered to the plaintiff 33.628 tons of monazite sand, representing to the plaintiff that the same contained by a European chemist's analysis 6.35 per cent. of thorium oxide, and charged the plaintiff $55 a ton for each percentage of thorium oxide contained in each short ton; that the plaintiff, relying on these representations, accepted the sand and paid to the defendant the sum of $11,744.58, at the rate of $349.25 a ton; that the sand did not contain 6.35 per cent. of thorium oxide, as represented, but only 5.31 per cent., as the plaintiff subsequently ascertained by analysis. The ad damnum was laid in the ninth and tenth articles of the complaint as follows:

"Ninth. That the difference between the value of the sand so delivered to the plaintiffs as aforesaid, and that which the defendant agreed to deliver, and for which the plaintiffs paid, is nineteen hundred and twenty-five ($1,925.00) dollars.

"Tenth. That by reason of the misrepresentations and breach of warranty of the defendant as aforesaid, the plaintiffs suffered additional damages in the sum of two thousand ($2,000) dollars, in that the sand delivered by the defendant to the plaintiff yielded approximately twenty per cent. (20%) less thorium than the sand which the defendant agreed to deliver, and that therefore twenty per cent. (20%) of the chemicals and labor were wasted, due to the fact that the said monazite sand was not up to the grade represented and warranted by the defendant."

The plaintiff proved delivery in the autumn of 1915, and that it stored the sand until some time in January or February, 1916, at which time it began to use it, and upon analysis found that it contained 5.31 per cent. of thorium oxide. After ascertaining breach of the contract it repudiated the delivery, but retained and used the sand, which the defendant would not receive. The damages were made up on the following principles, as stated in the complaint: First, the difference in the value of the sand paid for and that delivered, based upon content, computed at the figures stated in the contract, and amounting to $1,923.51, but stipulated at $1,925; second, that proportion of the cost of treating the whole of the sand actually delivered which the absent percentage of thorium oxide bore to the percentage stated in the contract. The jury found a verdict for both elements of damages under the charge of the judge and under exception of the defendant. In this court, and in the court below, the defendant questioned the jurisdiction over the subject-matter, the point being that the amount in controversy was less than $3,000.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Norbert Heinsheimer, of New York City (Henry K. Heyman, of New York City, of counsel), for plaintiff in error.

Charles S. Aronstam, of New York City (A. Freedman, of New York City, on the brief), for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] This being a suit for breach of warranty, the ordinary measure of damages would be the difference between the value of the monazite sand contracted for and that delivered. Florence Oil, etc., Co. v. Farrar, 119 Fed. 150, 55 C. C. A. 656. Now the value of the lower grade of monazite sand is theoretically not to be determined by the absence of that thorium which the plaintiff paid for and did not get. Moreover, in the case at bar the plaintiff's own evidence actually showed that 5 per cent. monazite sand has a value of $50 per ton for each percentage, instead of $55. Hence the plaintiff might have asked that the value of the sand actually delivered be taken at $265.50 per ton, instead of the price paid, $349.25. The damages under that aspect would have been $2,816.35, instead of $1,925, though this was still not sufficient for purposes of jurisdiction. In order to supplement the discrepancy between the difference in value, stated at $1,925, and the jurisdictional amount, the plaintiff added to its ad damnum, by way of special damages, that proportion of the total cost of treating the monazite sand which the absent percentage of thorium bore to the total percentage contracted for, roughly 20 per cent. Its theory was that it might take as absolute loss that proportion of the cost which would have resulted in extracted thorium, if the delivery had been according to the contract.

[2, 3] If the allegation in the complaint of these added damages is on its face insufficient in law, the court below was without jurisdiction. Vance v. Vandercook, 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; North Amer., etc., Co. v. Morrison, 178 U. S. 262, 20 Sup. Ct. 869, 44 L. Ed. 1061; Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171. The last case is particularly close, holding that even notice to the seller of the buyer's purposes is not sufficient to charge him with the loss resulting from their disappointment. There can be no doubt that the tenth article was insufficient as an allegation of special damages, for it did not allege that the plaintiff could not ascertain the character of the sand without incurring the cost of treating the whole of the sand, or that the defendant had contracted with reference to any such necessity nor indeed, even that it had had notice of it, assuming that such an allegation could have survived (Globe Refining Co. v. Landa Cotton Oil Co., supra), under the peculiar circumstances of the case. Without some sufficient allegations the damages were necessarily limited by the ninth article and were too small. It follows that the District Court was without jurisdiction, and should have dismissed the complaint sua sponte.

[4, 5] Furthermore, even if we were not strictly limited in jurisdictional questions to the form of the pleading, or assuming that, since the case was tried, and the plaintiff got a verdict, we might treat the pleadings as conformed to the proof, the result is no different, because under no pleading that the proof would admit was there jurisdiction. It appeared on the contrary that the plaintiff learned of the deficiency of the sand in thorium oxide when only a small part of it, between 3 and 4 tons, had as yet been ground. There was, besides, not the least color for saying that the defendant had even notice, to say nothing of more, of this supposed necessity to run through the whole of the sand. Finally, passing even these fatal deficiencies, there was no proof of special damages, if any such were recoverable. The proportion of the cost of treating the sand would not have been the measure. The proper measure would in that event have been the value of extracted thorium, in quantity equal to what the sand should have contained, less the cost of extraction, plus the contract price of the sand. There was no evidence of the value of extracted thorium, nor any basis for inference of its value.

The judgment is reversed, and the complaint dismissed for lack of jurisdiction, with costs.