CLEVELAND CLIFFS IRON CO. v. VILLAGE OF KINNEY et al.

(District Court, D. Minnesota, Fifth Division.    August 20, 1919.)

1. COURTS ⬩280—DISTRICT COURT MUST SEARCH RECORD FOR JURISDICTIONAL FACTS.

United States District Court, being a court of limited jurisdiction, must search the record in each case to ascertain whether the jurisdictional facts exist.

2. COURTS ⬩322(5)—AMENDMENT TO ALLEGE DIVERSITY OF CITIZENSHIP IS ALLOWED AS OF COURSE AT ANY STAGE.

Under the express provisions of Judicial Code, § 274c (Comp. St. § 1251c), an amendment to allege the diversity of citizenship necessary to give the court jurisdiction may be allowed as of course at any stage of the proceedings, if such diversity in fact exists.

3. COURTS ⬩329—BILL TO ENJOIN ELECTION FOR ANNEXATION TO VILLAGE HELD NOT TO SHOW JURISDICTIONAL AMOUNT IN CONTROVERSY BY INCREASE OF TAXATION.

A bill to enjoin an election to annex territory to a village, which alleged the ownership by complainant of land within the territory affected, but did not allege that the amount of taxation would be thereby increased, does not establish the jurisdictional amount in controversy, though it does allege that the assessed valuation of plaintiff's land exceeded that amount.

4. COURTS ⬩329—BILL TO ENJOIN ELECTION FOR ANNEXATION TO VILLAGE AS HELD NOT TO SHOW JURISDICTIONAL AMOUNT IN CONTROVERSY.

A bill to enjoin an election to annex territory containing land of complainant to a village, because such annexation would infringe plaintiff's right to have his taxes assessed and levied by the township, instead of the village, authorities, but not showing the value of such right, does not establish the jurisdictional amount in controversy.

5. COURTS ⬩262(2)—EXISTENCE OF REMEDY AT LAW ENFORCEABLE ONLY IN STATE COURT DOES NOT DENY EQUITABLE POWER OF FEDERAL COURT.

The fact that plaintiff, who by reason of diversity of citizenship is entitled to sue in the federal court, has a plain, speedy, and adequate remedy at law enforceable only in the state courts, does not deprive it of the right to sue in equity in the federal court.

6. COURTS ⬩262(2)—DOUBTFUL REMEDY AT LAW DOES NOT NEGATIVE JURISDICTION.

The fact that plaintiff has a remedy at law by quo warranto does not deprive him of right to sue in equity, where it is doubtful whether the state quo warranto proceedings can be enforced in the federal court.

7. EQUITY ⬩17—PROTECTION OF PROPERTY RIGHT EXTENDS TO EVERY RIGHT OF A PECUNIARY NATURE.

The jurisdiction of equity, unless enlarged by express statute, is limited to protection of rights of property, but such rights of property include any civil right of a pecuniary nature.

8. EQUITY ⬩15—RIGHT TO BE GOVERNED AND TAXED BY TOWNSHIP RATHER THAN VILLAGE IS "POLITICAL RIGHT" NOT ENFORCEABLE IN EQUITY.

The right of an owner of property to continue to have his land assessed and taxes levied thereon, and the money spent by township authorities, instead of by village authorities, is a political, not a property, right, which cannot be enforced by equity; political rights consisting in the power to participate directly or indirectly in the management of the government.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Political Right.]

9. INJUNCTION ⬩80—WILL NOT ISSUE AGAINST HOLDING OF AN ELECTION.

Though, under Laws Minn. 1909, c. 113, as construed by the state Supreme Court, the question whether property in territory sought to be

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

annexed to a village is such as may properly be subjected to village government is open to inquiry in quo warranto proceedings, equity cannot pass on that question, which is the question to be determined by the electors, in a suit to restrain the holding of the election, and will not enjoin an election on that question.

10. MUNICIPAL CORPORATIONS 33 (9)—STATE COURT'S RIGHT TO REVIEW ELEC-
TION ANNEXING TERRITORY BY QUO WARRANTO DOES NOT MAKE RIGHT OF PAR-
TIES A PROPERTY RIGHT.

Laws Minn. 1909, c. 113, giving the state courts power to review by quo warranto the validity of an election for the annexation of territory to a village, does not change the political right of property owners in that territory to remain under township government into a property right, which may be enforced in equity.

In Equity. Suit by the Cleveland Cliffs Iron Company against the Village of Kinney and others to enjoin the holding of an election. On final hearing. Preliminary injunction set aside, and bill dismissed.

Washburn, Bailey & Mitchell, of Duluth, Minn., for plaintiff.

Whipple & Randall, of Duluth, Minn., and Luke F. Burns, of Virginia, Minn., for defendants Village of Kinney, John Schultz, and John Setala.

Charles E. Adams and Whipple & Randall, all of Duluth, Minn., for defendant county auditor.

BOOTH, District Judge. This is a suit in equity by the Cleveland Cliffs Iron Company against the village of Kinney and others, to enjoin the defendants from holding an election for the purpose of annexing to the village of Kinney the lands described in the complaint, and from calling an election at any time during the pendency of the action to vote upon said question of annexation, or from taking any action in reference to such election. The bill was filed June 12, 1918. A preliminary injunction was issued on the 15th day of June, 1918. Subsequently the county auditor was made a party defendant. The case has been brought on for final hearing upon the bill, amended and supplemental bill, answers to said original and supplemental bills, and testimony taken. The following facts appear:

The village of Kinney is a village in St. Louis county, Minn., including within its limits, at the commencement of this suit, approximately 1,200 acres of land, and with a population of approximately 1,000 persons. The assessed value of the land within the limits of the village of Kinney for the year 1917 was approximately $846,985. The taxes levied and assessed for said year by said village were approximately $15,500. The village is located within the town of Great Scott. The total valuation in said town at the commencement of the suit was approximately $2,105,000.

Plaintiff is the owner through leases of the following lands lying within the town of Great Scott, but outside the limits of the village of Kinney as existing at the commencement of this suit, to wit: The north one-half of the southwest quarter and the southeast quarter of the southwest quarter of section 12, and the north one-half of the northwest quarter and the southeast quarter of the northwest quarter of section 13, all in township 58 north, range 19 west. The assessed

valuation of said property at the commencement of the suit was approximately $300,000; at the time of the trial approximately $400,000. At the commencement of the suit there was but one resident upon the lands owned by the plaintiff, but the plaintiff was at that time planning to open mines upon its property, and about to bring a considerable number of men upon said lands for the purpose of opening and operating the mine. At the time of the trial, the mine had been opened, and the population on the plaintiff's land was approximately 257.

· On the 4th day of June, 1918, there was presented to the village council of the village of Kinney a petition, signed by 6 persons, praying that the village council call an annexation election for the purpose of determining whether certain territory described in the petition should be annexed to the village of Kinney, including plaintiff's lands, and comprising in all some 1,560 acres, having approximately 108 residents. Upon the presentation of said petition, the village council passed a resolution calling an election for the 17th of June, 1918, and appointed the defendants John Schultz and John Setala inspectors and judges of election, and as a third inspector and judge Alvin Goodspeed, Sr.

The statutory steps preliminary to the holding of the election were duly taken. On the 15th of June, 1918, a preliminary injunction was issued after hearing, and was served upon the village of Kinney and two of the personal defendants, to wit, John Schultz and Alvin Goodspeed, Jr. By inadvertence, one of the personal defendants was alleged in the complaint to be an inspector of the election, when in fact he was not, so that service of the writ of injunction was in fact made on one only of the three inspectors of the election. On the 17th of June, 1918, the election was held. Two of the appointed inspectors being absent, the third one who was present swore in two other inspectors in accordance with the provisions of the statute. On the 18th of June, the village recorder of the village made his certificate and attached thereto certain papers, required by the statute to be filed with the county auditor in case of such election, and forwarded same to the county auditor. Each and all of the inspectors of the election and the village recorder had full knowledge and notice of the preliminary injunction.

Thereafter, and on or about the 3d of September, 1918, the village council of Kinney passed a resolution making its annual levy of taxes in the sum of $40,000 for general purposes and returned the same to the county auditor. The taxes as finally spread upon the tax books by the county auditor for said village of Kinney for said year amounted to $31,614.22.

The supplemental bill sets out facts as to matters occurring subsequent to the issuance of the preliminary injunction, and prays for additional relief, viz. that the attempted annexation be declared invalid, that the election proceedings be set aside, and the land attempted to be included by said annexation be declared not a part of the village of Kinney, and that the county auditor be enjoined from spreading any taxes levied by the village of Kinney against the lands attempted to be annexed.

By timely motions, and also in their answers, the defendants have contested the jurisdiction of the court: First, that this court as a fed-

eral court has no jurisdiction of the case; second, that the subject-matter in suit is not one of which an equity court in general has jurisdiction.

[1] The United States District Court, being a court of limited jurisdiction, it is the duty of the court to search the record in each case to ascertain whether the jurisdictional facts exist. N. Y. Life Ins. Co. v. Johnson, 255 Fed. 958, 167 C. C. A. 250. Although upon the face of the plaintiff's pleadings the claim is made that the statute under which the election was proposed to be held is unconstitutional and void, as being in contravention both as to the Constitution of the United States and of the state of Minnesota, such contention was expressly disclaimed upon the final hearing.

[2] The jurisdiction of this court as a federal court is sought to be sustained on the ground of diversity of citizenship. This was not alleged in the original bill; but an amendment was allowed, and, although the sufficiency of this amendment is attacked, yet, as it appears from the record that the diversity of citizenship does in fact exist, an amendment which would be sufficient in form would be allowed as of course at any stage of the proceedings. Judicial Code, § 274c (Comp. St. § 1251c).

[3] But the amount involved necessary to give the court jurisdiction is not alleged either in the original bill or in the supplemental bill. The assessed valuation of plaintiff's land is alleged and proven, but this amount, of course, is not the amount involved in the suit. The loss of the land is not involved nor is any damage to the land alleged or claimed. However, questions relating to the taxation of the land are involved, and the original bill contains this allegation:

"That the annexation of said lands of this plaintiff would be of absolutely no benefit to this plaintiff, or to said lands; on the contrary, it would simply divert funds raised by taxation upon certain property to the village treasurer, to be largely squandered in useless expenditures, the annual taxes at the present village rate on said property being upwards of $5,000 yearly."

It is not alleged, however, what the current taxes paid by the plaintiff on its said lands in the town of Great Scott were under the conditions existing at the time of filing the bill, nor is it alleged what the taxes levied by the town of Great Scott on said lands would be if the proposed annexation was not carried out. It may be noted in this connection that, if the village of Kinney and the town of Great Scott each should levy taxes upon plaintiff's land up to the legal limit under the existing statutes of Minnesota, the difference between the two amounts thus levied would not be sufficient to meet the jurisdictional requirement of this court. Further than this, upon the trial, one of the plaintiff's witnesses, manager of said plaintiff company, testified that the company made no claim that the taxes would be higher on plaintiff's lands after annexation than before, and did not base opposition to the annexation on the ground of increased taxation, but did claim that the taxes levied should be expended by the township authorities of the town of Great Scott, rather than be expended by the village authorities of Kinney, for the benefit of that village.

[4] Such being the state of the record, the jurisdictional amount, so far as increased taxes are concerned, is neither alleged, claimed,

nor shown to exist. Two rights are, however, claimed by the plaintiff to be threatened or injured by the annexation:

1. The right to have the taxes paid by plaintiff company levied and administered by the authorities of the town of Great Scott rather than by the authorities of the village of Kinney.

2. The right to have plaintiff's lands remain subject to township government, instead of being subjected to village government.

But no value is alleged or proven as to either of these rights nor is the amount of threatened damage either alleged or proven. Perhaps, in the nature of the case, this was not possible; but, if so, it simply shows the impossibility of establishing one of the necessary jurisdictional facts. My conclusion is, therefore, that the prerequisite jurisdictional amount is not shown to exist and that the bill must be for that reason dismissed. See Vance v. Vandercook Co., 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; U. S. Express Co. v. Poe, Auditor, et al. (C. C.) 61 Fed. 475; Risley v. City of Utica et al. (C. C.) 168 Fed. 737; Maryland Casualty Co. v. Price et al., 231 Fed. 397, 145 C. C. A. 391, Ann. Cas. 1917B, 50; Fuerst Bros. & Co. v. Polasky et al., 249 Fed. 447, 162 C. C. A. 13; N. Y. Life Ins. Co. v. Johnson, 255 Fed. 958, 167 C. C. A. 250.

It is also urged by defendants that this court, as a court of equity, has no jurisdiction on account of the nature of the suit.

[5] 1. It is contended that plaintiff has a plain, adequate, and complete remedy at law, namely, by quo warranto. In my judgment this contention cannot be sustained. Where by reason of diverse citizenship plaintiffs are entitled to sue in the federal court, the remedy at law to negative equitable jurisdiction must be a remedy at law in the federal court. Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630; Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140; Singer Sewing Mch. Co. v. Benedict, Treas., etc., 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288; Johnson, Treas., v. Wells Fargo & Co., 239 U. S. 234, 243, 36 Sup. Ct. 62, 60 L. Ed. 243; Union Pac. R. R. Co. v. Board of County Com'rs, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110.

[6] It is probable that the remedy of quo warranto in the federal court is limited to cases specifically authorized by statute. See Foster's Federal Practice, § 468; In re Yancey (C. C.) 28 Fed. 445, 451. If the remedy at law is doubtful merely, equitable jurisdiction is properly exercised. Davis v. Wakelee, 156 U. S. 680, 16 Sup. Ct. 1200, 41 L. Ed. 310; Union Pac. R. R. Co. v. Board of County Com'rs, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110.

[7] 2. It is further contended by defendants that the court has no jurisdiction, because the subject-matter of the suit is not of equitable cognizance. It is claimed that the acts sought to be enjoined are political acts, and that the rights sought to be asserted by plaintiff are political rights. In the case of In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402, the court, in speaking of the jurisdiction of a court of equity, said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

This jurisdiction, however, to protect rights of property, includes any civil right of a pecuniary nature. International News Service v. Associated Press, 248 U. S. 215, 236, 39 Sup. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293. And equity may even restrain prosecution under unconstitutional enactments if necessary to protect property rights. Davis & Farnum Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778; Dobbins v. Los Angeles, 195 U. S. 223, 241, 25 Sup. Ct. 18, 49 L. Ed. 169; Ex parte Young, 209 U. S. 123, 155, 161, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Philadelphia Co. v. Stimson, 223 U. S. 605, 607, 620, 32 Sup. Ct. 340, 56 L. Ed. 570.

[8] As has been shown above, the right to prevent a threatened illegal increase of taxes is not in this case, but the two rights claimed by the plaintiff are: (1) The right to have the taxes paid by plaintiff company levied and administered by the authorities of the town of Great Scott, rather than by the authorities of the village of Kinney; (2) the right to have plaintiff's lands remain subject to township government, instead of being subjected to village government. Whether such rights actually exist, and are possessed by plaintiff, and, if so, whether they are property rights, may both well be doubted.

That the Legislature may change the boundaries of the political subdivisions of the state is elementary. In Kelly v. Pittsburg, 104 U. S. 78, 26 L. Ed. 658, the court said:

"What portion of a state shall be within the limits of a city, and be governed by its authorities and its laws, has always been considered to be a proper subject of legislation. How thickly or how sparsely the territory within a city must be settled is one of the matters within legislative discretion. Whether territory should be governed for local purposes by a county, a city, or a township organization is one of the most usual and ordinary subjects of state legislation."

In the case of Hunter v. Pittsburg, 207 U. S. 161, 28 Sup. Ct. 40, 52 L. Ed. 151, the court said:

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. * * * The number and nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. * * * The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter, and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its acts to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."

See, also, Mt. Pleasant v. Beckwith, 100 U. S. 514, 529, 25 L. Ed. 699; McQuillin on Mun. Corporations, § 265; State v. Village of Gilbert, 127 Minn. 452, 459, 149 N. W. 951, and cases cited; Dillon, Mun. Corporations. § 1394.

But it is claimed by plaintiff that these cases have reference to acts done and changes made by the Legislature directly; whereas, in the case at bar, the action is taken by the local authorities under general law, and that there is a distinction between the two classes of cases, and that in the latter class of cases courts of equity will interfere, even to the extent of enjoining an election whenever necessary to protect property rights. The cases of Wilton v. Pierce County, 61 Wash. 386, 112 Pac. 386, Macon v. Hughes, 110 Ga. 795, 36 S. E. 247, Layton v. Mayor, 50 La. Ann. 121, 23 South. 99, and other cases are cited by plaintiff as tending to support such contention. I do not think these cases proceed upon the distinction claimed by plaintiff, but they do hold that a court of equity has jurisdiction under certain circumstances to enjoin the holding of an election. In my judgment, however, these cases are opposed to the greater weight of authority, and this is recognized in the Georgia case.

[9] It is the general rule that courts of equity have no jurisdiction in political matters, and that, in the absence of special statutory authority, courts of equity have no power to enjoin the holding of an election; and this is true, whether the election relates to the filling of public office or to other matters, such as changes in boundaries or political subdivisions and other kindred matters. State of Ga. v. Stanton, 6 Wall. 50, 18 L. Ed. 721; Holmes v. Oldham, 12 Fed. Cas. 421, No. 6,643; Green v. Mills, 69 Fed. 852, 16 C. C. A. 516, 30 L. R. A. 90; Anthony v. Burrow (C. C.) 129 Fed. 783; Taylor v. Kercheval (C. C.) 82 Fed. 497, 500; Angelus v. Sullivan, 246 Fed. 54, 64, 158 C. C. A. 280; Bonifaci v. Thompson (D. C.) 252 Fed. 878, 879; People v. City of Galesburg, 48 Ill. 486; Dickey v. Reed, 78 Ill. 261; Walton v. Develing, 61 Ill. 201; Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220; Harris v. Schryock, 82 Ill. 119; People v. Barrett, 203 Ill. 99, 67 N. E. 742, 96 Am. St. Rep. 296; People v. McWeeney, 259 Ill. 161, 102 N. E. 233, Ann. Cas. 1916B, 34; Morgan v. County Court, 53 W. Va. 372, 44 S. E. 182; Smith v. McCarthy, 56 Pa. 359; Spelling on Inj. § 630; Joyce on Inj. §§ 1386–1390; Duggan v. Emporia, 84 Kan. 429, 114 Pac. 235, Ann. Cas. 1912A, 719; City Council of McAlester v. Milwee, 31 Okl. 620, 122 Pac. 173, 40 L. R. A. (N. S.) 576; McCrary on Elections, § 386; Pomeroy's Eq. Rem. vol. 1, § 331.

[10] It is true that the Supreme Court of the state of Minnesota, in State v. Gilbert, has held that the lands sought to be annexed under chapter 113, Laws of 1909 (the statute here involved), must be so conditioned as properly to be subjected to village government, and that this question is open to inquiry by the courts in quo warranto proceedings. This holding does not, in my judgment, establish that the right inquired into in the quo warranto proceedings is a property right, nor does it give countenance to the idea that a court of equity has jurisdic-

tion to enjoin the holding of such an election. It rather indicates that, when the Legislature acts through its subordinate agency the village council, the acts of such council, though quasi political in their nature and affecting political rights, are nevertheless subject to inquiry by the courts in quo warranto proceedings, for the purpose of ascertaining whether the acts of the council have been in conformity with the statutory requirements. That property rights may be affected by the result of the quo warranto proceedings is doubtless true; but the fundamental basis of the proceeding is to ascertain the legality of the quasi political acts of the local authorities, including the constitutionality of the statute under which they act.

The definition of "political rights," given by Bouvier and quoted with approval by the court in People v. Barrett, supra, is as follows:

"Political rights consist in the power to participate, directly or indirectly, in the establishment or management of government."

It is suggested that the plaintiff, being a corporation, cannot, strictly speaking, be possessed of political rights as such. This is probably true, but the conclusion sought to be drawn that the rights claimed by plaintiff in the case at bar must therefore be property rights is not a necessary conclusion. With perhaps equal justification the conclusion might be drawn that no such rights as plaintiff claims in the case at bar exist at all in behalf of a corporation.

But whether the alleged rights of plaintiff, which are sought to be protected, are property rights or quasi political rights, it is certain that the relief demanded is a drastic interference with political rights. This is not all. It is demanded that the court, in advance of the election, determine the very question which the voters are entitled to decide, namely, whether the territory in question sought to be annexed is so conditioned as to be properly subject to village government. That this question, under the Minnesota statutes and decisions, is a question of fact for the voters to decide, see State v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539; State v. Village of Gilbert, supra.

It is true that this decision of the voters on that question may be inquired into by the courts by way of review in quo warranto proceedings; but this review after the election is quite a different matter from restraining the holding of the election until the court has itself first passed its judgment upon the very question which the election is to decide.

All of the cases cited by plaintiff in which injunctions were granted against the holding of elections were based on the fact that there was some matter outside the election itself into which the court might properly inquire and the determination of which might necessitate the forbidding of the election. In the case at bar, the court is asked to determine, first, the very question involved in the election, and then, if the decision is adverse, to forbid the voters to pass upon that question, although the Legislature has said they may pass upon it. No case has been pointed out holding that a court of equity has such power, and I am constrained to hold that it has no such jurisdiction.

Inasmuch as what has been said disposes of the case, it is unnecessary to consider the question whether the lands of plaintiff sought to be annexed to the village of Kinney were so conditioned as to be properly subject to village government, nor the further question as to the effect of the violation of the preliminary injunction by the defendants. Since this court has at no time had jurisdiction, the preliminary injunction must be set aside, and the original bill and amended and supplemental bill dismissed, with costs to the defendants; and it is so ordered. A decree may be prepared accordingly.

It is with great diffidence that I have reached these conclusions, because the question of jurisdiction has already been passed upon favorably by my associate in issuing the preliminary injunction; and it is only at his express request, and after I had once refused to reopen the question of jurisdiction, that I have consented to consider and pass upon the matter. While the conclusions are not free from doubt, they are the only ones that I have been able conscientiously to adopt, after a careful consideration of the record, aided by the well-prepared briefs of able counsel. Much fuller discussion has doubtless been given to the question of jurisdiction upon the final hearing than was practicable at the hearing for a preliminary injunction.

It is also with great reluctance that I have reached the result stated, because it precludes doing more than expressing the deepest disapproval of the course of action taken by the defendants and others, who either by active or tacit participation have supported them in disobeying the preliminary injunction. Such conduct was in my judgment gravely unbecoming and unwarranted.