## GULICK et al. v. LINN et al.

No. 14428—Opinion Filed June 19, 1923.

(Syllabus.)

1. **Counties—Formation of New Counties—Original Jurisdiction of Supreme Court—Matters Arising Prior to Election.**
Sections 13 and 14, chapter 40, Session Laws of Oklahoma, 1910-11 (sections 5690 and 5691, Compiled Laws 1921), do not confer exclusive original jurisdiction on the Supreme Court in matters touching the holding of an election, provided for in said chapter, and which arise prior to the time the election is held.

2. **Same—Injunction Against Election—Jurisdiction.**
Rarely will equity enjoin the holding of any kind of an election: but where the election is called for the purpose of the electors voting on whether certain parts of a county shall be detached therefrom and formed into a new county, and it is alleged that the detachment of the territory described is prohibited by express law, and the same would involve an expenditure of public funds, chancery has jurisdiction. Chancery will not interfere where the purpose and object of the election finds sanction in apparent law, or is not prohibited by law.

3. **Same—Prohibition Against Court Issuing Injunction.**
A petition was filed in the name of the state, on the relation of the county attorney of Caddo county, against the members of the county election board, to restrain them from holding an election in certain townships and precincts in said county, on the question of whether certain townships should be detached from Caddo county and erected, with other territory, into a proposed new county to be known as Walton county. It alleged in part that the Governor had issued his proclamation calling an election in about 15 townships of Caddo county, describing them specifically, and setting out the proclamation in full, that the electors thereof might vote on whether such territory should be detached from Caddo county; that the proclamation was void, and called for an

election on the formation of a new county in a manner not sanctioned by law, and in violation of law—in that the territory described, if detached from Caddo county, would bring the boundary of said county within less than 15 miles of the county seat of Caddo county, which is prohibited by law, and that the officers sought to be enjoined were about to unlawfully and illegally expend public funds therefor. Held, that the matters pleaded draw in question rights not purely political, and that the petition raises questions the determination of which is within the jurisdiction of the district court. The writ of prohibition sought against the district court is denied.

Application for writ of prohibition by W. F. Gulick and J. W. Savage against Will Linn and M. W. Pugh, District Judges, and Sam L. Wilhite, County Attorney. Writ denied.

Lydick & Wilson, for plaintiffs.

A. J. Morris, for defendants.

BRANSON, J. Plaintiffs ask a writ of prohibition against the district court of the Fifteenth judicial district, and the judges thereof, to prevent the enforcement of an injunction judgment entered therein on the 1st day of June, 1923, in a cause then pending in said court, entitled, "The State of Oklahoma on the Relation of Sam L. Wilhite, County Attorney of Caddo county, Oklahoma, Plaintiffs, v. Perry M. Gotham and others, Members of the County Election Board of Caddo County, Oklahoma, Defendants," enjoining said board and its members from holding on June 26, 1923, an election called by the Governor, and intended to be held in approximately 16 townships of said county of Caddo, the purpose and object of which was to permit the qualified electors of that part of said county designated in the petition to pass upon whether or not the territory therein described should be detached from Caddo county and become, with other territory of Canadian county, a new, separate, and distinct subdivision to be known as "Walton county."

To secure this writ, the plaintiffs make a preliminary contention that under and by reason of sections 13 and 14, chapter 40, Session Laws of Oklahoma, 1910-11 (sections 5690-5691, Compiled Laws Okla. 1921), exclusive original jurisdiction is conferred upon the Supreme Court in all matters touching the formation of new counties, as herein involved. A proper reading of the sections cited does not lead to the result contended for, and does not deprive the district court of jurisdiction to hear a controversy as there involved, and said court had such jurisdiction, unless it be for other reasons deprived thereof.

The petition in said injunction cause alleged in part that the Governor had issued his proclamation calling an election to be held in those parts of Caddo and Canadian counties, as described in the proclamation, sought to be detached for the purpose of forming a new county; that said proclamation is void, and the call for said election was for a purpose in excess of, and not sanctioned by law, in that, among numerous other reasons set out in the petition, to take the territory specified in the proclamation from the said county of Caddo would bring the boundary of said county within eleven miles of the city of Anadarko, the county seat of said county, in violation of the provisions of chapter 120 of the Session Laws of 1917, and that the officers were about to expend public funds therefor illegally.

The petition pleaded further the proclamation of the Governor which recites as to the county line of said county: "And the change sought to be made in creating said new county of Walton, will not bring the county line of the county of Caddo nearer than ten miles to the county seat of said county of Caddo, * * *" And, as further alleged, that said statute provides that territory cannot be served for such purpose from an organized county which would bring the boundary of the old county within less than 15 miles from the county seat thereof.

Objection made to the jurisdiction of the district court for the reason the suit sought injunctive relief against the exercise of purely political rights, was overruled, and the allegations of the petition were heard on their merit, and the injunction judgment sought here to be prohibited was entered.

As in the district court, it is urged here by the plaintiffs that the writ sought against the judgment should be granted, for the reason that equity will not assume jurisdiction to grant relief against the exercise of purely political rights, and that the judgment complained of is for that reason void, as in excess of the jurisdiction of the court.

Many cases are cited by the plaintiffs in support of this contention. While it is impracticable to discuss any considerable number of the cases cited, or to go into them to an extent that might show the reasons for the rule, and the apparent exceptions thereto, we are convinced the opinions are read with resultant confusion, unless the facts in each case are clearly in mind. We find no reason to be averse to the declaration of the general rule as found in the first case cited by the plaintiffs (City Council, etc., v. Milwee et al., 31 Okla. 621), to the effect that "Courts of equity are only conversant with matters of property and the maintenance of civil rights, and will not interfere to enforce or protect purely political rights." An election to recall the mayor of the city of McAlester, under the provisions of apparent law, was sought there to be prohibited by injunction.

Davis, Supt. of Public Instruction, v. Whitehead, 86 Okla. 274, 208 Pac. 216, is urged as authority from this court on the question involved. This case sought injunctive relief against an election for the consoli-

dation of school districts. The decision turned upon the right of appeal given by statute. In the language used in the case:

"* * * The rule is announced to the effect that courts will not interfere with the action of school officers in forming or altering school districts, except in cases of fraud, corruption, oppression, or where gross injustice is clearly shown. Where an appeal may be taken from the action of an official forming or altering school districts, the weight of authority appears to support the rule that the remedy by appeal is exclusive."

Write much about the varying opinions of the courts, discussing the sacredness of political rights, the exercise of which chancery will not ordinarily assume jurisdiction to regulate or defeat by injunction, can it be said there is an invasion of any right, political or otherwise, for equity to assert its power to prevent an intended election, accompanied by a large expenditure of public funds, which, if the vote is favorable, would have for its purpose dismembering a political subdivision without sanction or basis in apparent law, but in violation of the law of the state? Political rights is a misnomer if the alleged rights sought to be exercised have not only no sanction in law, but are for a purpose in excess of and in violation of apparent law.

In the case of Cleveland Cliffs Iron Co. v. Village of Kinney, 262 Fed. 980, the Supreme Court of the United States, in discussing a case involving a question similar to the one here, said:

"All of the cases cited by plaintiff in which injunctions were granted against the holding of elections were based upon the fact that there was some matter outside of the election itself, into which the court might properly inquire, and the determination of which might necessitate the forbidding of the intended election."

There is no case cited where the result of the proposed election might be an expression of the voters in favor of dismemberment of a political subdivision, for the purpose of forming a new one, but which expression could not, under the law as it is, be effective, where a court of equity has refused to interpose and grant the relief prayed. Where equity has refused to take jurisdiction, the exercise of the political rights against which injunction was sought was based upon the authority of apparent law, and not outside apparent law, or the election could have no result other than that which is purely political, such as a determination of who shall or shall not hold office or exercise the right of franchise.

The case here involved is not such a case. The law of this state on the formation of new

counties by detaching territory from organized counties requires that the proposed new county must have an area of 400 square miles, a population of 15,000 people, taxable wealth of not less than $2,500,000, and the territory to be taken from the parent county must not bring the boundary thereof nearer than 15 miles to the county seat of said parent county, as well as several other prerequisites.

The rights sought here to be enforced by the suit in the lower court were not purely political, on authority of State ex rel. v. Houston, 27 Okla. 606, 113 Pac. 190, and cases therein cited and quoted, for that in the case of Armstrong v. State, 29 Okla. 161, 116 Pac. 770, this court said in effect that the people residing in counties whose boundaries were fixed by the Constitution (and such was the case of Caddo county) had a right to retain their boundaries intact, until changed by and in accordance with the provisions of the law, saying:

"The rights of these quasi municipal corporations are granted to them by the Constitution, and they are as sacred as any other right secured by that instrument to either corporations or private persons."

The district court suit had for its purpose enjoining, not only illegal expenditures of public funds, as in the Houston Case, supra, but the protection of the territorial integrity of Caddo county, and its boundaries, as guaranteed to it by law. Chapter 120, Session Laws of 1917, among other things, provides that if the change in county boundaries is sought to be made for the purpose of forming a new county out of territory taken from an organized county, the newly created lines of such existing county shall not be brought nearer than 15 miles to the county seat of such existing county. The petition filed in the district court of Caddo county alleged at great length that this is proposed to be done in the proclamation calling the election against the holding of which relief was sought. The above quoted recitation in the Governor's proclamation calling the election in question, does not even purport to find that the boundaries of the county of Caddo, if the territory should be taken therefrom as proposed, will not be less than 15 miles from the county seat, but the proclamation says the boundaries will not be brought within less than ten miles from the county seat. (In discussing the 15 mile limit, it is without any consideration of the act of the Legislature of 1919, chapter 213.) Section 4, article 17, Williams' Oklahoma Constitution, is in no wise violated by chapter 120 of the Session Laws of Oklahoma, 1917, supra, extending the constitutional boundary limit of old counties, in event of such change, from 10 to 15 miles from the

county seat, but the act of the Legislature has its basis and sanction in the said constitutional provision.

In the case of State ex rel. v. Houston, supra, prohibition was sought in this court against Huston, District Judge, taking jurisdiction in a suit which sought to restrain the removal of the capitol by state officers, and of the books, records, etc., pertaining to state government, from the city of Guthrie to Oklahoma City. The jurisdiction of the court was challenged on grounds here contended for. This court, speaking through Justice Williams, said:

"But this action is not instituted in the name of a taxpayer, but in the name of the state by one of its executive law officers in behalf of the general public, seeking in its own courts (26 Am. & Eng. Ency. of Law [2nd Ed.] 485) to prevent the unlawful disbursement of public funds and the removal of the state capitol under an alleged invalid act. In order to determine whether this writ of prohibition should run, it is to be assumed that the averments of fact of the second amended petition are true. For under the allegations of the petition, if the district court has jurisdiction, it must be allowed to first pass on the question as to the validity of the act and to try the question of fact as to the threatened removal and unlawful disbursement of funds."

So in the case drawn and brought as here, if the allegations of the petition are true.

This court, in the last-mentioned case, quoted with approval from the case of Rickey et al. v. Williams et al. ('Wash.) 36 Pac. 480, in which it is said:

: "In either event, the action of the board in submitting the question of the removal of the county seat from Colville to Kettle Falls was absolutely unauthorized, and the election held in pursuance thereof was necessarily invalid for that reason, and the question is presented as to whether, under such a state of facts, an injunction will lie to prevent a threatened removal of the county seat in pursuance of such void election. It is contended, first, by appellants that such an action will not lie at the suit of a taxpayer, as the question of the removal of a county seat is a political question, in which no person has any property right, and many authorities are presented in relation thereto. A number of states have held that a suit to enjoin the removal of a county seat will not lie at the instance of a taxpayer. In Attorney General v. Supervisors, 33 Mich. 289, it is held that the removal of a county seat is a purely political question, and does not in any way legally involve the rights of private parties. There was no question of increased expenses or the expenditure of public moneys involved in that case. Other cases have been cited to the same effect, but we deem it unnecessary to discuss them. Considered in the abstract,

it must be admitted that such question is a political question; but when it appears that such changed location involves the expenditure of a large sum of public money, which would otherwise be unnecessary, no good reason is apparent why the removal thereof may not be enjoined, in case the election was void. Numerous instances have been presented where the right of a taxpayer to enjoin the illegal expenditure of public moneys and the unlawful levying of a tax has been sustained, and there is no good reason why such a suit will not lie in all cases, regardless of the use to which the money is to be devoted, and although the validity of an election to determine the relocation of a county seat is involved?"

Were the election a favorable vote for the new county, the allegations of the petition filed in the district court being taken as true, the new county would find itself in a state of confusion, apparently possessed of territory belonging as a matter of law to Caddo county. This could result in good to no one, in either his political or civil rights. In the vernacular of the radio enthusiast, should the chancellor not "tune in" under the allegations there made, and lend a listening ear when civil rights, individual and corporate, although not unmixed with political rights, are about to be injuriously affected without and beyond the sanction of express law?

In an early Tennessee case, Humphreys County v. Houston County, 4 Baxter, 593, the Supreme Court of that state said:

"The creation of a county is a legislative and not a judicial function, but the chancery court has jurisdiction to prevent the violation of the Constitution and law in fixing the boundaries of the new counties, and in securing to the old counties out of which the new one is carved so much of their territory as is declared inviolable, or by protecting such other rights as are guaranteed by the organic law."

This case finds sanction in a number of well-reasoned cases, which are cited by the respondents. Rickey et al. v. Williams et al. (Wash.) 36 Pac. 480; Connor et al. v. Gray et al., 88 Miss. 489; Oden v. Barbee et al. (Tex.) 129 S. W. 602; Wood v. Ball (Tex.) 166 S. W. 4; Wilton v. Pierce County (Wash.) 112 Pac. 386; Macon v. Hughes et al. (Ga.) 36 S. E. 247; De Kalb County v. City of Atlanta (Ga.) 65 S. E. 72; Bradley v. Commissioners, 2 Hun, 428, 37 Am. Dec. 563; State ex rel. County Attorney v. Eggelston (Kan.) 10 Pac. 3; Solomon et al. v. Fleming et al. (Neb.) 51 N. W. 304.

And the potent reasons therefor should not be shaken by authorities which deal almost entirely with cases where political rights solely are involved.

The writ of prohibition sought is denied.

McNEILL, KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.