(No. 80076.—Judgment affirmed in part and reversed in part.)

JOHN F. TULLY, Indiv. and on Behalf of All Others Similarly Situated, Appellee, v. JIM EDGAR, Governor of the State of Illinois, *et al.*, Appellants (Gloria Jackson Bacon *et al.*, Sued in Their Official Capacity as Trustees of the University of Illinois, Appellees).

*Opinion filed March 21, 1996.*

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Barbara E. Pitts, Assistant Attorney General, of Chicago, of counsel), for appellants.

William J. Harte, Ltd., and Joseph E. Tighe, P.C., both of Chicago, for appellee John F. Tully.

Lee J. Schwartz, of Chicago, for appellee Judith Ann Calder.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, John Tully, brought a declaratory judgment action in the circuit court of Cook County against the Governor of the State of Illinois and President of the Illinois Senate (the appellants) and the nine elected trustees of the Board of Trustees of the University of Illinois, challenging the constitutionality of Public Act 89—5, "An Act relating to the University of Illinois" (the Act) (Pub. Act 89—5, eff. January 1, 1996). The complaint asked the circuit court to declare the Act unconstitutional as violative of the right to vote embodied in article III of the Illinois Constitution of 1970 (Ill. Const. 1970, art. III). The complaint also asked the circuit court to enjoin Governor Edgar and Senate President Philip from appointing any individuals as trustees for the University of Illinois and to declare that the current trustees would continue to serve until completion of their terms as established by law prior to the enactment of Public Act 89—5. One of the trustees, Judith Ann Calder, filed a cross-claim to the complaint, raising eight additional constitutional challenges to the Act.

On October 10, 1995, the circuit court entered an order declaring the Act unconstitutional. The circuit court concluded that the Act violated the right to vote found in article III, section 1, of the Illinois Constitution; that it amended the charter creating the University of Illinois in violation of article I, section 10, paragraph 1, of the United States Constitution; and that it ended the perpetual succession of the University of Illinois Board of Trustees in violation of article IV, section 8(d), of the Illinois Constitution. On October 13, 1995, the circuit court entered an order applying its ruling to the President of the Senate and entered a separate final and appealable order. This court allowed Governor Edgar and Senate President Philip's direct appeal to this court

pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)).

## FACTS

The Act amends, *inter alia*, the University of Illinois Trustees Act (110 ILCS 310/1 *et seq.* (West 1994)) and the Election Code (10 ILCS 5/1—1 *et seq.* (West 1994)). In particular, the Act, which was intended to take effect on January 1, 1996, changes the Board of Trustees of the University of Illinois (the Board of Trustees) from an elective to an appointive office. The current Board of Trustees is comprised of nine elected trustees. 110 ILCS 310/2 (West 1994). Three trustees are elected to serve six-year terms at the general election in November of each even-numbered year. 110 ILCS 310/2 (West 1994). The most recent election for trustees occurred during the November 1994 general election.

Three months after that election, in February 1995, the General Assembly enacted and the Governor signed the Act. Specifically, the Act provides:

"The Board of Trustees of the University of Illinois shall consist of 9 trustees appointed by the Governor, by and with the advice and consent of the Senate, the Governor, and one nonvoting student member from each campus of the University of Illinois." Pub. Act 89—5, § 15, eff. January 1, 1996.

The sole limitation on who may be appointed under this process specified in the Act is that no more than five of the members whom the Governor appoints shall be affiliated with the same political party. Pub. Act 89—5, § 15, eff. January 1, 1996. The Act states that the appointed trustees will serve six-year terms, beginning in January.

The Act also provides:

"The term of each elected trustee who is in office on the effective date of this amendatory Act of 1995 shall terminate on the second Monday in January, 1996, or when a quorum of the trustees initially to be appointed

under this amendatory Act of 1995 is appointed and qualified, whichever last occurs." Pub. Act 89—5, § 15, eff. January 1, 1996.

This provision, which curtails the term of the existing elected trustees and effectively removes them from office, is the focus of the constitutional challenges in this case.

On May 15, 1995, Tully filed a class action suit attacking this provision on the ground that it violates his right of suffrage and the right of suffrage of others similarly situated in violation of article III, section 1, of the Illinois Constitution (Ill. Const. 1970, art. III, § 1). He argued that the Act shortens the terms of elected officers after their elections have occurred, which operates as a "post-hoc" negation of his right to vote. He also argued that the Act infringes upon his right to free and equal elections in violation of article III, section 3, of the Illinois Constitution (Ill. Const. 1970, art. III, § 3) and that it violates article III, section 4, of the Illinois Constitution (Ill. Const. 1970, art. III, § 4), which provides that laws governing voter registration and the conduct of elections shall be general and uniform. Tully asked the circuit court to declare the Act unconstitutional, to enjoin Governor Edgar and Senate President Philip from appointing any individuals as trustees, and to declare that the current trustees shall continue to serve until completion of the terms to which they were elected.

Governor Edgar filed an answer to Tully's complaint. Judith Ann Calder, one of the sitting trustees, also filed an answer and eight "affirmative pleadings," which were subsequently considered a cross-claim. Calder challenged the constitutionality of the Act on a number of grounds. She claimed that the Act: (1) ends the "perpetual succession" of the Board of Trustees (110 ILCS 305/1 (West 1994)) in violation of the contract clause of the United States Constitution (U.S. Const., art. I, § 10); (2)

violates the amendment-without-reference provision of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)); (3) is a bill of attainder and works a forfeiture of estate in violation of the United States and Illinois Constitutions (U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 11); (4) violates the due process rights of the current trustees in violation of the United States and Illinois Constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2); (5) violates the freedom of speech and freedom of association rights of Calder and other Democratic members of the Board of Trustees (U.S. Const., amend. I; Ill. Const. 1970, art. I, § 4); (6) violates the impeachment provision of the Illinois Constitution (Ill. Const. 1970, art. IV, § 14); and (7) violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1). Calder also argued that, to avoid the constitutional problems raised, the Act should be construed so that the elected trustees are replaced with appointed trustees only at the end of the terms to which they were elected.

Tully and Governor Edgar ultimately filed cross-motions for summary judgment in the circuit court, alleging that no issues of fact existed and that the case could be resolved as a matter of law. The circuit court granted Tully's motion for summary judgment and declared the Act unconstitutional on several grounds. The court first found that the Act violates the right to vote contained in article III, section 1, of the Illinois Constitution. The court stated that the right to vote is a fundamental right and that the State had failed to identify a compelling state interest that required the statutory abridgment of the Board of Trustee's elected terms of office. The circuit court did not consider Tully's allegations that the Act violates sections 3 and 4 of article III of the Illinois Constitution.

The circuit court also found that the Act violates

the contract clause of the United States Constitution (U.S. Const., art. I, § 10), an argument advanced by Calder in her affirmative pleadings. The circuit court held that the Act ends the perpetual succession of the Board of Trustees by substituting a "wholly new body in its stead," in violation of the contract clause of the United States Constitution (U.S. Const., art. I, § 10). The court also accepted Calder's argument that the Act violates the amendment-by-reference provision found in article IV, section 8(d), of the Illinois Constitution, which requires that "a bill amending a law shall set forth completely the sections amended." The court's finding was again based upon its conclusion that the Act purports to end the perpetual succession of the Board, but fails to set out in its text section 1 of the University of Illinois Act (110 ILCS 305/1 (West 1994)), which provides the Board with perpetual succession.

Subsequently, the circuit court entered an agreed order allowing the Attorney General leave to file an appearance on behalf of Senate President Philip and to adopt all pleadings and motions filed on behalf of Governor Edgar. The court then entered judgment for Tully and against all defendants. Judgment was also entered for Calder on paragraphs 1 and 2 of her cross-claim. Governor Edgar and Senate President Philip filed a direct appeal in this court.

## ANALYSIS

Before addressing the constitutional challenges raised in this appeal, it is useful to clarify that certain issues *are not* raised. The appellants devote a significant portion of their brief to the question of whether the General Assembly, having created an office, enjoys the power thereafter to alter the nature of the office or to change the manner in which the officers come to serve. Tully and Calder concede that the General Assembly has the power to change the office of trustee from an

elective to an appointive office. They argue, however, that in exercising such power, the General Assembly may not transgress constitutional limitations. They claim that the General Assembly ran afoul of various provisions of the United States and Illinois Constitutions when it provided for the removal, without cause, of the nine elected trustees from office before the expiration of their six-year terms.

## I. Right to Vote

### A. *Standard of Review*

Tully claims that the Act violates his right of suffrage and the right of those similarly situated, in violation of article III, section 1, of the Illinois Constitution. The starting point of our inquiry is the appropriate standard of review. Legislation challenged in this court benefits from a presumption of constitutionality. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 332 (1989). Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test. *Potts*, 128 Ill. 2d at 329. Under this test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Boynton v. Kusper*, 112 Ill. 2d 356, 369 (1986).

Where challenged legislation implicates a fundamental constitutional right, however, such as the right to vote, the presumption of constitutionality is lessened and a far more demanding scrutiny is required. *Potts*, 128 Ill. 2d at 329. When the means used by a legislature to achieve a legislative goal impinge upon a fundamental right, the court will examine the statute under the strict scrutiny standard. *Potts*, 128 Ill. 2d at 329. Under a standard of strict scrutiny, the court must conclude that the means employed by the legislature to achieve a stated goal were necessary to advance a compelling state inter-

est. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 73 (1990). In addition, the statute must be narrowly tailored, that is, the legislature must use the least restrictive means consistent with the attainment of the legislative goal. *Fumarolo*, 142 Ill. 2d at 73; *Boynton*, 112 Ill. 2d at 369.

B. *Legislation Implicates Fundamental Right to Vote*

Tully claims that the Act implicates the fundamental right to vote. Specifically, he argues that the Act is an unconstitutional impairment of the rights of suffrage exercised by Tully and others in the 1990, 1992, and 1994 general elections, where the current members of the Board of Trustees were elected for staggered six-year terms to expire in 1997, 1999 and 2001, respectively.

He argues that the Act implicates the right of suffrage because it nullifies the result of a valid election and effectively removes the trustees whom the citizens elected to serve. He argues that the people of the State, by their vote, determined who would serve as trustee for the succeeding six years and that the Act operates as a "post-hoc" negation of the right to vote. He claims that legislation that eliminates the right of the elected official to serve, while retaining the office to which the representatives have been elected, implicates the right to vote guaranteed in the Illinois Constitution. Tully claims that the Act injures his voting right by removing, without cause, the trustees as to whom his voting right was exercised. Tully further claims that, because the right to vote is a fundamental constitutional right, the Act may be upheld only if it withstands a strict scrutiny analysis. We agree.

Suffrage—the expression by the people of their will—is fundamental to a viable democratic form of government. Article III, section 1, of the 1970 Illinois Constitution reaffirms the principle that all qualified citizens have a constitutionally protected right to vote

and to have their votes counted. *Craig v. Peterson*, 39 Ill. 2d 191, 195 (1968); *Reynolds v. Sims*, 377 U.S. 533, 554, 12 L. Ed. 2d 506, 523, 84 S. Ct. 1362, 1377-78 (1964); Ill. Ann. Stat., 1970 Const., art. III, § 1, Constitutional Commentary, at 53 (Smith-Hurd 1993).

This court has recognized that the right to vote is a fundamental constitutional right, essential to our system of government. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 74 (1990). Our court has also recognized that " '[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.' " *Anderson v. Schneider*, 67 Ill. 2d 165, 172 (1977), quoting *Wesberry v. Sanders*, 376 U.S. 1, 17, 11 L. Ed. 2d 481, 492, 84 S. Ct. 526, 535 (1964).

The appellants argue that the Act does not implicate the right to vote protected in our constitution. They argue, in essence, that the constitutional right to vote is implicated only when the General Assembly enacts legislation that directly interferes with a citizen's right to cast a vote or to have that vote counted.

Although this court has never before considered the precise issue presented here, we find the appellants' narrow construction of the right to vote illogical and unpersuasive. It strains logic to suggest that the right to vote *is* implicated by legislation that prohibits a citizen from casting a vote or from having that vote counted, but *is not* implicated by legislation that, in effect, deprives that same vote of its natural and intended effect. The legislation challenged here basically eviscerates the election process by providing that, even though the trustees received the majority of votes cast and counted on election day, they are prohibited from holding office for the terms to which they were elected.

Our cases support the view that legislation that affects *any* stage of the election process implicates the right to vote. Thus, this court has determined that the right to vote is implicated by legislation that restricts a candidate's effort to gain access to the ballot. *Anderson v. Schneider*, 67 Ill. 2d 165, 172-73 (1977). It has also held that the right to vote is implicated by legislation that limits the people's right to nominate candidates (*People v. Fox*, 294 Ill. 263 (1920)) and that prohibits the counting of legally cast ballots (*Craig v. Peterson*, 39 Ill. 2d 191 (1968)). More recently, in *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54 (1990), this court held that the constitutional right to vote is implicated by legislation that gives some votes cast greater or lesser weight than others.

The legislation challenged here does not simply give the votes cast by some citizens less effect than others. Rather, it establishes a mechanism for *total* disregard of *all* votes cast by citizens in a particular election. The vote cast by a citizen is not simply diluted, but is totally nullified by the legislative scheme. The Act does not simply "impair" the vote but, rather, obliterates its effect. The Act, in essence, voids the votes cast by citizens in a valid election and authorizes the Governor to select the candidates of his choice. The integrity of the vote is undermined and destroyed by the legislative scheme.

It distorts reality to argue, as the appellants here do, that the right to vote is satisfied whenever a citizen is permitted to cast his vote and have that vote counted. The democratic form of government guaranteed by our constitution requires something more than an adherence to form. It is not merely the casting of the vote or its mechanical counting that is protected by our constitution. It is the effect given to the vote—namely, the office—that is protected.

We must vigilantly ensure that our constitution

protects not just the right to cast a vote, but the right to have a vote fully serve its purpose. If the vote cast by all those who favor a particular candidate exceeds the number cast in favor of a rival, the result is constitutionally protected from nullification except by the voters themselves. When the people have chosen their representatives in a valid election, legislation that nullifies the people's choice by eliminating the right of the elected official to serve implicates the fundamental right to vote.

The appellants nevertheless urge that the right to vote is not implicated by the Act. The appellants first argue that this court has repeatedly held that the legislature has authority to modify, change or even take away entirely the powers conferred on legislatively created offices. See, *e.g., People ex rel. Malley v. Barrett*, 203 Ill. 99 (1903). Our cases, however, specifically state that the legislature's authority to enact *any* statute, including statutes governing legislatively created offices, is *subject to limitations imposed in the constitution. Barrett*, 203 Ill. at 109; see *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 525 (1990). One of the limits imposed in the constitution is, of course, the fundamental right to vote.

The appellants also argue that the right to vote is not implicated by the Act because a vote cast for a trustee is not a vote cast for a "State officer" or a candidate in a representative government. Although we note that the appellants waived this argument by failing to raise it in the trial court, we will nevertheless consider it, and it is easily rejected.

This court's decision in *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54 (1990), disposes of the appellants' contention that the right to vote is not implicated in the election of officials below the grade of "State officer." *Fumarolo* addressed the constitutionality of the

Chicago School Reform Act. That statute created the office of local school board council and defined the manner in which council members were selected.

Although the statute at issue in *Fumarolo* governed only the election of members to a legislatively created *local* office, the court nevertheless concluded that the statute implicated the fundamental right to vote and must be subjected to strict scrutiny. The court, quoting a United States Supreme Court opinion, noted that a citizen's " 'right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator. While there are differences in the powers of different officials, the crucial consideration is the right of each qualified voter to participate on an equal footing in the election process.' " *Fumarolo*, 142 Ill. 2d at 76, quoting *Hadley v. Junior College District*, 397 U.S. 50, 55, 25 L. Ed. 2d 45, 50, 90 S. Ct. 791, 794 (1970). The *Fumarolo* court determined that members of local school councils perform important governmental functions and that legislation that dilutes the votes cast in the election of such school councils implicates the right to vote. In reaching this conclusion, the Court stated that "local school councils perform functions which are at the heart of a traditional and vital governmental function: the operation of public education." *Fumarolo*, 142 Ill. 2d at 84.

Given this court's holding in *Fumarolo*, we must certainly reject the appellants' implication that the trustees, who manage and administer the University of Illinois, do not perform important governmental functions or serve in an important representative capacity. The Board of Trustees of the University of Illinois is empowered to make important budgetary, educational and administrative decisions regarding the largest university in this state. Their powers include, *inter alia*, the authority to fix the tuition rates, to appoint profes-

sors and instructors, to hire employees, to purchase, lease and acquire property by eminent domain, to construct buildings, to establish and provide for the management of educational departments within the University, and to appoint members of the University police department. 110 ILCS 305/7 (West 1994). The citizens of this state elected the trustees to represent their interests in connection with the governance of a university which educates a significant number of this state's youth. Like the local school council at issue in *Fumarolo*, the trustees "perform functions which are at the heart of a traditional and vital governmental function: the operation of public education." *Fumarolo*, 142 Ill. 2d at 84. The trustees, whose election the State has opened to all qualified voters, are government officials in every relevant sense of that term. See *Hadley v. Junior College District*, 397 U.S. 50, 56, 25 L. Ed. 2d 45, 51, 90 S. Ct. 791, 795 (1970). Accordingly, we reject the appellants' claim that the votes cast for trustees are not entitled to constitutional protection because the trustees do not serve an important representative capacity. We also reject their claim that the portion of the Act which removes them from office does not implicate the right to vote.

The appellants finally assert that the protection afforded in our constitution to the right to vote does not guarantee voters that elected officials will serve their entire term. Tully concedes that the right to vote does not entitle the electorate, under all circumstances, to have elected officials remain in office. He notes that the elected trustees may resign, retire or die. He also concedes that the General Assembly may enact legislation that removes such officials under some circumstances, such as incompetence or illegality in office. He notes that such legislation, although impinging upon the fundamental right to vote, could withstand strict

scrutiny if it served a compelling state interest and was narrowly tailored to further that interest. He argues, however, that the Act challenged here impinges upon the fundamental right to vote by removing a validly elected official from office midterm. He further argues that absent allegations of incompetence or impropriety, the Act cannot withstand strict scrutiny. We agree.

### C. *Legislation Does Not Satisfy Strict Scrutiny*

Under the strict scrutiny analysis we must consider three questions: (1) Does the Act advance a compelling state interest? (2) Is the provision nullifying the votes cast in the election and removing the elected from office necessary to achieve the legislation's asserted goal? and (3) Are the provisions in the legislation the least restrictive means available to attain the legislation's goal? *Fumarolo*, 142 Ill. 2d at 90.

We note that the appellants make no attempt to identify any compelling state interest which requires the State to remove the elected officials midterm and to replace the elected trustees with appointed trustees. There is some evidence in the record that the legislature determined that the quality of the Board of Trustees would be higher if the trustees were appointed, rather than elected. We doubt whether the desire to obtain a more highly qualified Board of Trustees is a compelling state interest. Even assuming, however, that the Act might somehow be construed as advancing the State's compelling interest in education (*Fumarolo*, 142 Ill. 2d at 90) and that the first prong of the strict scrutiny analysis is thereby satisfied, it is apparent that the second and third prongs of that analysis are not satisfied here.

Legislation that nullifies the votes cast in a valid election and removes the elected trustees from office midterm is not necessary to or narrowly tailored to achieve the legislature's presumed goal. There is no suggestion that the currently elected trustees are incompe-

tent. Nor is there any assertion that the immediate removal of those trustees is necessary to improve the quality of education at the University of Illinois.

Moreover, it is evident that the legislature's goal could be achieved by other means that would not impinge upon the fundamental right to vote. The legislature could certainly provide that, upon the expiration of the terms of office of the currently elected trustees, successor trustees will be appointed rather than elected. We conclude that the section of the Act which provides for the removal of the elected trustees midterm is not necessary to achieve the legislature's presumed goal. Nor is the immediate removal of the elected trustees the least restrictive means of achieving that presumed goal. We therefore hold that the portion of the Act that removes the sitting trustees from office does not meet the strict scrutiny standard and is violative of the right to vote guaranteed under the Illinois Constitution.

Because we conclude that the statute is unconstitutional under the Illinois Constitution, it is unnecessary to address the remaining constitutional challenges to the Act.

## II. Severability

As discussed above, we have determined that the portion of the Act that removes the sitting elected trustees from office midterm is unconstitutional. Our next consideration is whether the remaining provisions of the Act are severable pursuant to the general severability statute, which provides that if any provision of a statute "is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid *** provision, and to this end the provisions of each Act *** are severable, unless otherwise provided by the Act." 5 ILCS 70/1.31 (West 1994). We must discuss this general severability

statute because the Act does not contain a specific severability provision.

In determining whether an unconstitutional provision in a statute is severable from the remainder of the statute, a court must ascertain and give effect to the legislature's intent. *Russell Stewart Oil Co. v. State of Illinois*, 124 Ill. 2d 116, 128 (1988); *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221, 237 (1986). We presume that the legislature intended to enact a statute that was consistent with the constitution and must give effect to as much of the statute as is possible, consistent with the constitution. *Dornfeld v. Julian*, 104 Ill. 2d 261, 266 (1984). This court stated the general standard for determining severability in *People ex rel. Adamowski v. Wilson*, 20 Ill. 2d 568, 582 (1960): "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated." See also *Russell Stewart Oil Co.*, 124 Ill. 2d at 128. Applying these principles here, we conclude that the unconstitutional portion of the Act is severable from the remainder of the Act.

The primary purpose of the Act was to change the Board of Trustees from an elective to an appointive office. Without the provision removing the elected trustees from office midterm, the Act is constitutional and satisfies its apparent objective. Moreover, those portions of the Act that state that trustees will hereafter be appointed by the Governor, with the advice and consent of the Senate, rather than elected, are complete and capable of being executed wholly independently of that portion of the Act that removes the sitting trustees from office. The valid and invalid parts of the statute are not

so inextricably connected that we must conclude that the legislature would not have enacted the statute without the invalid portion. Accordingly, we conclude that the legislature intended the Act to remain a valid statute, even if the portion immediately removing the elected trustees from office is excised.

## CONCLUSION

That portion of the Act that removes the elected trustees from office is invalid and shall not be given effect. The remainder of the Act shall remain in effect. The appointive process set forth in the Act shall be implemented when the terms of the elected trustees expire or when those offices become vacant through death, resignation or other means. For these reasons, the judgment of the circuit court is affirmed to the extent that it declared the appropriate provision of the Act invalid, but reversed as to its declaring the remaining provisions invalid.

*Judgment affirmed in part*
*and reversed in part.*