ROBERT K. ANDERSON, Plaintiff-Appellant, v. THE CHICAGO BOARD OF ELECTION COMMISSIONERS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—96—0628

Opinion filed October 30, 1996.

Daniel J. Kelley, of Chicago, for appellant.

James M. Scanlon, of Rieff & Scanlon, and Clark D. Pellett, both of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

This is an appeal from a final order of the circuit court denying plaintiff Robert K. Anderson's challenge to the nominating petition of Arthur J. Fitzgerald as a candidate for Republican ward committeeman of the 47th ward of the City of Chicago. Since this case was filed, the election was held and Mr. Fitzgerald was elected to that party office.[1] The sole issue on appeal is whether his nominating petition had the requisite number of signatures to be placed on the ballot.

The contest focuses on a challenge to one signature, that of James Nurnberg. It is undisputed that Mr. Nurnberg was injured in a fire and that as a result of that injury Mr. Nurnberg is confined to a wheelchair and communicates "with his eyes and nodding his head up and down." His wife, Jacalyn Nurnberg, was appointed as his guardian by the probate court after the accident. Mr. Nurnberg is a registered voter in the 47th ward. On the nominating petition at issue in this matter, Mr. Nurnberg's signature was executed at a proper time and place by his wife in his presence and in the presence of the proper authority, following his nodded assent when asked if he wished to execute Mr. Fitzgerald's petition. Anderson challenges the signature, claiming that Mrs. Nurnberg's execution of her husband's signature violated section 7—10 of the Election Code (10 ILCS 5/7—10 (West 1992)) (the Code). That challenge was rejected by a hearing examiner appointed by the Chicago Board of Elections (the Board), by the Board itself, and by the circuit court.

■ Judicial review of an electoral board's decision is a check on unsupported or arbitrary decision making. In the case at bar, we find that the question presented is one of statutory construction and reviewable, therefore, *de novo.* "[I]n cases involving an agency's interpretation of a statute which the agency is charged with administering, the agency's interpretation is considered relevant but not binding on the court." *Branson v. Department of Revenue,* 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).

---

[1]That election does not moot this case. Under the Election Code (10 ILCS 5/1—1 *et seq.* (West 1992)), the time for filing challenges to nominating petitions, and seeking review of board decisions on those challenges, is extremely compressed. As a consequence, appellate review frequently is unavailable until after the election has been completed and the results certified. Where issues are likely to recur and involve matters of public concern, an appeal need not be dismissed as moot (see, *e.g., In re Estate of Brooks,* 32 Ill. 2d 361, 205 N.E.2d 435 (1965); *Johnny Bruce Co. v. City of Champaign,* 24 Ill. App. 3d 900, 321 N.E.2d 469 (1974)).

The specific challenge brought by Mr. Anderson directly raises a constitutional issue:

> "We have recognized that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.' *Storer v. Brown*, 415 U.S. 724, 730[, 39 L. Ed. 2d 714, 723, 94 S. Ct. 1274, 1279] (1974). To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 75 L. Ed. 2d 547, 557, 103 S. Ct. 1564, 1569-70 (1983).

■ The core of Anderson's argument is that section 7—10 mandates that petitions be signed personally by the voter, rather than with any form of assistance. The language of section 7—10 can be read that way. That section, after defining the forms to be employed in nominating petitions, goes on to state:

> "Such petition shall be signed by qualified primary electors residing in the political division for which the nomination is sought in their own proper persons only and opposite the signature of each signer, his residence address shall be written or printed." 10 ILCS 5/7—10 (West 1992).

Anderson claims that the clause "in his own proper person" precluded Mrs. Nurnberg from executing the petition in her husband's name, even observing the proper safeguards as to where, when and before whom the petition is to be signed, an argument we equate with the requirement that James Nurnberg can participate in the petition process only by overcoming his disability and regaining the ability to sign his name.

■ This reading of the Election Code is an intolerably procrustean one and results in a patently unconstitutional result: the disenfranchisement of Mr. Nurnberg. Our supreme court, in *Tully v. Edgar*, 171 Ill. 2d 297, 307, 664 N.E.2d 43 (1996), stated:

> "Our cases support the view that legislation that affects *any* stage of the election process implicates the right to vote. Thus, this court has determined that the right to vote is implicated by legislation that restricts a candidate's effort to gain access to the ballot. [Citation.] It has also held that the right to vote is implicated by legislation that limits the people's right to nominate candidates [citation] and that prohibits the counting of legally cast ballots [citation]." (Emphasis in original.)

In a democratic society, there are few rights as valuable as the right to vote. That right would be a barren one if the vote were to be protected but the nomination process were to be vastly more restrictive than the voting process itself, especially in an age that advances more vigorously then ever the rights of disabled persons to become, rightfully, full participants in the mainstream of American life. Thus, strong first amendment principles are activated by any statute that purports to bar registered voters from participating in the nomination process. Mr. Anderson characterizes Mr. Nurnberg's position as "unfortunate" and opines that the Election Code simply does not present any mechanism that would allow him to sign nomination petitions except by his own hand. We cannot agree.

With regard to elections themselves, the Election Code evinces a strong public policy protecting the rights of those unable to physically participate due to some disability. For example, the Election Code provides:

> "Any primary elector who may declare upon oath, properly witnessed and with his or her signature or mark affixed, that he or she requires assistance to vote by reason of blindness, physical disability or inability to read, write or speak the English language, shall, upon request, be assisted in marking his or her primary ballot in the same manner as provided by this Act for general elections." 10 ILCS 5/7—48 (West 1994).

See also 10 ILCS 5/17—14 (West 1994). We regard these provisions as strong evidence of the important public policies underlying free and open elections and access to the ballot, which weigh heavily in our consideration of the issue *sub judice.*

Section 3—1.2 of the Election Code (10 ILCS 5/3—1.2 (West 1994)) provides as follows:

> "For the purpose of determining eligibility to sign a nominating petition or a petition proposing a public question, the terms 'voter', 'registered voter', 'qualified voter', 'legal voter', 'elector', 'qualified elector', 'primary elector', and 'qualified primary elector' as used in this Code or in another Statute shall mean a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." 10 ILCS 5/3—1.2 (West 1994).

While this provision does not define the meaning of the term "his own proper person" as used in section 7—10, it is indicative of the broad sweep of the intent underlying the Election Code: if you are a voter, you may execute a petition.

Where two statutory provisions address the same subject matter, it is well established that those statutes should be construed *in pari materia* and that an interpretation that gives effect to both provi-

sions must be adopted (*In re Application For Judgment & Sale Of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168-69 (1995)). Here, section 3—1.2 plainly contemplates that all voters may participate in the nominating process. The first amendment requires nothing less. In order to achieve that goal, section 7—10 must be construed to mean that a voter who is otherwise eligible but who, because of illness or disability, cannot physically execute a petition may be granted assistance in that process. The Board's construction of the Election Code achieved that result and honored both the letter and the spirit of the Election Code. We do not perceive any error in that construction. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DiVITO and BURKE, JJ., concur.