SECOND DIVISION
 October 30, 1996

1-96-0628

ROBERT K. ANDERSON, ) APPEAL FROM THE CIRCUIT COURT
 ) OF COOK COUNTY, ILLINOIS, COUN-
 Plaintiff-Appellant, ) TY DEPARTMENT, COUNTY DIVISION.
 ) 
 v. ) 
 )
CHICAGO BOARD OF ELECTION ) THE HONORABLE
COMMISSIONERS, et al., ) MICHAEL J. MURPHY,
 ) JUDGE PRESIDING.
 Defendants-Appellees. )

 JUSTICE SCARIANO delivered the opinion of the Court:
 This is an appeal from a final order of the Circuit Court de-
nying plaintiff Robert K. Anderson's challenge to the nominating
petition of Arthur J. Fitzgerald as a candidate for Republican Ward
Committeeman of the 47th Ward of the City of Chicago. Since this
case was filed, the election was held and Mr. Fitzgerald was elect-
ed to that party office. The sole issue on appeal is whether his
nominating petition had the requisite number of signatures to be
placed on the ballot. 
 The contest focuses on a challenge to one signature, that of
James Nurnberg. It is undisputed that Mr. Nurnberg was injured in
a fire, and that as a result of that injury Mr. Nurnberg is confin-
ed to a wheelchair and communicates "with his eyes and nodding his
head up and down." His wife, Jacalyn Nurnberg, was appointed as
his guardian by the Probate Court after the accident. Mr. Nurnberg
is a registered voter in the 47th Ward. On the nominating petition
at issue in this matter, Mr. Nurnberg's signature was executed at
a proper time and place by his wife in his presence and in the pre-
sence of the proper authority, following his nodded assent when
asked if he wished to execute Mr. Fitzgerald's petition. Anderson
challenges the signature, claiming that Mrs. Nurnberg's execution
of her husband's signature violated 7-10 of the Election Code (10
ILCS 5/7-10; "the Code"). That challenge was rejected by a hearing
examiner appointed by the Chicago Board of Elections ("the Board"),
by the Board itself, and by the circuit court.
 Judicial review of an electoral board's decision is a check on
unsupported or arbitrary decision-making. In the case at bar, we
find that the question presented is one of statutory construction,
and reviewable, therefore, de novo. "In cases involving an agen-
cy's interpretation of a statute which the agency is charged with
administering, the agency's interpretation is considered relevant
but not binding on the court." (Branson v. Department of Revenue
(1995), 168 Ill.2d 247, 254, 659 N.E.2d 961).
 The specific challenge brought by Mr. Anderson directly raises
a constitutional issue:
 "We have recognized that, 'as a practical matter, there must
 be a substantial regulation of elections if they are to be
 fair and honest and if some sort of order, rather than chaos,
 is to accompany the democratic process.' Storer v. Brown, 415
 U.S. 724, 730 (1974). To achieve these necessary objectives,
 States have enacted comprehensive and sometimes complex elec-
 tion codes. Each provision of these schemes, whether it gov-
 erns the registration and qualifications of voters, the selec-
 tion and eligibility of candidates, or the voting process it-
 self, inevitably affects -- at least to some degree -- the in-
 dividual's right to vote and his right to associate with oth-
 ers for political ends." (Anderson v. Celebrezze, 460 U.S.
 780, 788 (1983)).
 The core of Anderson's argument is that 7-10 mandates that
petitions be signed personally by the voter, rather than with any
form of assistance. The language of 7-10 can be read that way. 
That section, after defining the forms to be employed in nominating
petitions, goes on to state:
 "Such petition shall be signed by qualified primary electors
 residing in the political division for which the nomination is
 sought in their own proper person only and opposite the signa-
 ture of each signer, his residence address shall be written or
 printed." (10 ILCS 5/7-10)
Anderson claims that the clause "in his own proper person" preclud-
ed Mrs. Nurnberg from executing the petition in her husband's name,
even observing the proper safeguards as to where, when and before
whom the petition is to be signed, an argument we equate with the
requirement that James Nurnberg can participate in the petition pro-
cess only by overcoming his disability and regaining the ability to
sign his name. 
 This reading of the Election Code is an intolerably procruste-
an one, and results in a patently unconstitutional result: the dis-
enfranchisement of Mr. Nurnberg. Our Supreme Court, in Tully v.
Edgar (1996), 171 Ill.2d 297, 307, 664 N.E.2d 43, stated:
 "Our cases support the view that legislation that affects any
 stage of the election process implicates the right to vote. 
 Thus, this court has determined that the right to vote is im-
 plicated by legislation that restricts a candidate's effort to
 gain access to the ballot *** It has also held that the right
 to vote is implicated by legislation that limits the people's
 right to nominate candidates *** and that prohibits the count-
 ing of legally cast ballots ***" (citations deleted, emphasis
 in original).
 In a democratic society, there are few rights as valuable as
the right to vote. That right would be a barren one if the vote
were to be protected but the nomination process were to be vastly
more restrictive than the voting process itself, especially in an
age that advances more vigorously then ever the rights of disabled
persons to become, rightfully, full participants in the mainstream
of American life. Thus, strong First Amendment principles are ac-
tivated by any statute which purports to bar registered voters from
participating in the nomination process. Mr. Anderson character-
izes Mr. Nurnberg's position as "unfortunate" and opines that the
Election Code simply does not present any mechanism that would al-
low him to sign nomination petitions except by his own hand. We
cannot agree.
 With regard to elections themselves, the Election Code evinces
a strong public policy protecting the rights of those unable to
physically participate due to some disability. For example, the
Election Code Provides:
 "Any primary elector who may declare upon oath, properly wit-
 nessed and with his or her signature or mark affixed, that he
 or she requires assistance to vote by reason of blindness,
 physical disability or inability to read, write or speak the
 English language, shall, upon request, be assisted in marking
 his or her primary ballot in the same manner as provided by
 this Act for general elections." (10 ILCS 5/7-48).
(See also 10 ILCS 5/17-14). We regard these provisions as strong
evidence of the important public policies underlying free and open
elections and access to the ballot, which weigh heavily in our con-
sideration of the issue sub judice.
 Section 3-1.2 of the Elections Code (10 ILCS 5/3-1.2) provides
as follows:
 "For purposes of determining eligibility to sign a nominating
 petition or a petition proposing a public question, the terms
 'voter', 'registered voter', 'qualified voter', 'legal vot-
 er', 'elector', 'qualified elector', 'primary elector', and
 'qualified primary elector' as used in this Code or in another
 statute shall mean a person who is registered to vote at the
 address shown opposite his signature on the petition or was
 registered to vote at such address when he signed the peti-
 tion." (10 ILCS 5/3-1.2).
While this provision does not define the meaning of the term "his
own proper person" as used in 7-10, it is indicative of the broad
sweep of the intent underlying the Election Code: if you are a vot-
er, you may execute a petition. 
 Where two statutory provisions address the same subject mat-
ter, it is well-established that those statutes should be construed
as in pari materia, and that an interpretation which gives effect
to both provisions must be adopted (In Re Application For Judgment
Of Delinquent Properties, 167 Ill.2d 161, 168-69 (1995)). Here,
3-1.2 plainly contemplates that all voters may participate in the
nominating process. The First Amendment requires nothing less. In
order to achieve that goal, 7-10 must be construed to mean that a
voter who is otherwise eligible but who, because of illness or dis-
ability, cannot physically execute a petition, may be granted as-
sistance in that process. The Board's construction of the Election
Code achieved that result, and honored both the letter and the spi-
rit of the Election Code. We do not perceive any error in that
construction. Accordingly, the judgment of the Circuit Court is
affirmed.
 Affirmed.
 DiVITO and BURKE, JJ. concurring.